J-S74005-14

2015 PA Super 17

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TERRY WALKER, | |
| Appellant | No. 2246 EDA 2013 |

Appeal from the PCRA Order Entered July 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0608421-2005

BEFORE:  BENDER, P.J.E., DONOHUE, J., and STRASSBURGER, J.[*]

OPINION BY BENDER, P.J.E.:                    **FILED JANUARY 28, 2015**

Appellant, Terry Walker, appeals from the post-conviction court's July 8, 2013 order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.   After careful review, we vacate the PCRA court's order and remand for an evidentiary hearing.

The underlying facts of Appellant's case are as follows:

> On the morning of January 20, 2005, Joseph Smith, the victim, told a friend that he was to meet Appellant later in the day because Appellant owed him $1,300. Later that afternoon, Nathaniel Robinson, who was driving by 70[th] Street and Woodland Avenue in Philadelphia[,] saw flashes of light, heard a loud bang from the minivan in front of him, and felt something hit his car. The mini-van stopped in the middle of the street. Mr. Robinson saw the driver, later identified as Appellant, get out of

_____

[*] Retired Senior Judge assigned to the Superior Court.

the van, look around, get back in, and make a U-turn. One of the windows of the van was blown out. Appellant stopped again, got out of the van, opened the sliding door, and "scuffled" around, causing the van to rock back and forth. Appellant drove the van to 69th and Woodland where he pulled in at a service station. Mr. Robinson then saw Appellant go to the passenger side, stuff something down the front of his pants, and walk away slowly until he reached the end of the service station, when he broke into a run, leaving a trail of blood behind him from a gunshot wound to the hand. Later, blood from the stains found at the scene was matched to Appellant's DNA. Mr. Robinson found Mr. Smith in the van, bleeding and bound in "flex cuffs" on each of his wrists. He was covered in blood and struggling to get up.

Mr. Robinson called 9-1-1. A fire department emergency crew arrived and rushed Mr. Smith in an ambulance to the Hospital of the University of Pennsylvania about thirty-five blocks away. On the way to the hospital, the paramedic monitored Mr. Smith's level of consciousness by asking him informational questions. Mr. Smith gave the paramedic an incorrect age and the name "Phillip." He also responded eight or nine times "Terry Walker did it," or "Tell them that Terry Walker shot me." Mr. Smith lost consciousness a few blocks from the hospital and stopped answering questions. He died at 7:00 P.M., from nineteen gunshot wounds.

*Commonwealth v. Walker*, No. 910 EDA 2007, unpublished memorandum at 1-3 (Pa. Super. filed June 5, 2009).

Appellant was arrested and proceeded to a jury trial in March of 2007. At the close thereof, the jury convicted Appellant of first degree murder, robbery, and possessing an instrument of crime (PIC). He was sentenced to a term of life imprisonment for his murder conviction, plus consecutive terms of incarceration of 10 to 20 years, and 2½ to 5 years, for his robbery and PIC offenses, respectively. Appellant filed a timely direct appeal and after this Court affirmed his judgment of sentence, our Supreme Court denied his

subsequent petition for allowance of appeal. ***Commonwealth v. Walker***, 981 A.2d 325 (Pa. Super. 2009) (unpublished memorandum), *appeal denied*, 983 A.2d 1249 (Pa. 2009).

On February 8, 2010, Appellant filed a timely *pro se* PCRA petition and counsel was appointed. Various continuances occurred over the ensuing years. On April 30, 2012, PCRA counsel filed a petition to withdraw and 'no-merit' letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1998), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988). On June 5, 2012, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition. Appellant filed a *pro se* motion for an extension of time to respond to the Rule 907 notice, which the court granted. On August 17, 2012, Appellant filed a *pro se* response, framed as an amended PCRA petition. Therein, he raised sixteen issues, which the court directed PCRA counsel to review.

On December 10, 2012, PCRA counsel filed an amended PCRA petition on Appellant's behalf (which the court accepted) raising two of the 16 claims asserted in Appellant's *pro se* response to the court's Rule 907 notice. On April 23, 2013, the court issued a Rule 907 notice of its intent to dismiss Appellant's amended petition. Appellant did not file a response, and on July 8, 2013, the court issued an order dismissing his petition. Appellant filed a timely notice of appeal, and he also timely complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Thereafter, the PCRA court filed a Rule 1925(a) opinion.

Herein, Appellant presents two questions for our review:

1) Whether the PCRA court violated paragraph (1) of Pa.R.Crim.P. 907 by summarily dismissing [the] petition without [an] evidentiary hearing where there was a genuine issue of material fact as to whether trial counsel was ineffective for giving [Appellant] specific advice not to testify in his own behalf because the Commonwealth would impeach him with his prior criminal record, where [Appellant] did not have any *crimen falsi* convictions, which was so unreasonable as to violate his knowing and intelligent decision not to testify in his own behalf?

2) Whether the PCRA court violated paragraph (1) of Pa.R.Crim.P. 907 by summarily dismissing [the] petition without [an] evidentiary hearing where there was a genuine issue of material fact as to whether trial counsel was ineffective for failing to timely object to the prosecutor's prejudicial remarks during opening and closing arguments?

Appellant's Brief at 5.

We begin by noting that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain

- 4 -

relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Appellant first argues that the PCRA court erred by denying him an evidentiary hearing on his claim that trial counsel was ineffective for advising him not to testify at trial. Appellant contends that counsel erroneously informed him that if he took the stand, "the Commonwealth would impeach him with his prior criminal record[,]" yet Appellant had no prior *crimen falsi* convictions that could be revealed by the Commonwealth. Appellant's Brief at 12. Instead, his prior convictions were for aggravated assault and possession with intent to deliver (PWID). Appellant maintains that counsel's improper advice interfered with his right to testify, and "was so unreasonable as to vitiate his knowing and intelligent decision not to testify on his own behalf." *Id.* at 14. Appellant further contends that counsel could have had no reasonable basis for misinforming Appellant in this manner, and that he was prejudiced "because but for the arguably ineffective act of giving [Appellant] mistaken guidance that caused him not to testify, there is a reasonable probability that the result would have been different." *Id.* at 16.

In *Commonwealth v. Nieves*, 746 A.2d 1102 (Pa. 2000), our Supreme Court examined an extremely similar trial counsel ineffectiveness claim. There, Nieves' trial counsel convinced Nieves to waive his right to testify by erroneously advising him that if he took the stand, he would be impeached with his prior criminal record, which included "two firearms offenses and at least two drug trafficking offenses." *Id.* at 1104 (footnote omitted). Nieves claimed that counsel's advice constituted ineffective assistance, and our Supreme Court agreed, concluding "that such advice was clearly unreasonable as it is well-established that evidence of prior convictions can only be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement." *Id.* at 1104-1105. As Nieves' convictions for drug and firearms offenses "did not involve dishonesty or false statements[,]" they "would not have been admissible to impeach [Nieves'] credibility." *Id.* Thus, the *Nieves* Court held that because "the common pleas court credited [Nieves'] testimony that his decision not to testify was based solely on this erroneous advice, such decision cannot be deemed knowing or intelligent." *Id.* at 1105.

The *Nieves* Court went on to assess the Commonwealth's argument that trial counsel advised Nieves not to testify "because if he did, the Commonwealth could cross-examine him regarding the motive for the killing, which was allegedly a drug debt, and thereby introduce his prior convictions." *Id.* However, the Supreme Court rejected this argument,

citing counsel's testimony at the hearing in which counsel "acknowledged that he did not have an alternative reasonable strategy for advising [Nieves] not to testify." *Id.* at 1106. Instead, counsel's advice to Nieves was solely based on his belief that Nieves would be impeached with his prior convictions. Because that advice was clearly erroneous, the Supreme Court held "that trial counsel's advice was so unreasonable as to vitiate [Nieves'] knowing and intelligent decision not to testify." *Id.*

Here, the PCRA court did not discuss the arguable merit or reasonable basis prongs of the ineffective assistance of counsel test. Instead, the PCRA court concluded that Appellant failed to prove he was prejudiced by counsel's conduct, explaining that "what [Appellant] indicated … he would have testified to completely ignores the overwhelming evidence against him and would not have changed the outcome of the case."[1] PCRA Court Opinion (PCO), 5/1/14, at 5 (emphasis added). In other words, the PCRA court rejected Appellant's ineffectiveness claim because he failed to prove the *outcome of the trial* would have been different had he taken the stand.

After careful review, we are compelled to conclude that the PCRA court applied an incorrect prejudice standard in assessing Appellant's claim of trial

---

[1] Appellant's proposed testimony was set forth in a document entitled "Exhibits Addendum 1-6 to Amended PCRA Petition," filed by Appellant *pro se* on September 27, 2012. Appellant also reiterates his proposed testimony in his brief to this Court. *See* Appellant's Brief at 16.

counsel's ineffectiveness. In **Nieves**, after holding that "trial counsel's advice was so unreasonable as to vitiate [Nieves'] knowing and intelligent decision not to testify," **Nieves**, 746 A.2d at 1106, the Court indicated that the fact that Nieves' testimony would have likely "worked to his detriment" did "not compel a different conclusion."[2] **Id.** at 1106 n.7. The Court emphasized that "claims of counsel's ineffectiveness may not be evaluated in hindsight[,]" and also noted that it was "sheer speculation to conclude that what transpired during the penalty phase would have occurred at trial." **Id.** (citation omitted). We acknowledge that **Nieves** did not expressly address the appropriate prejudice standard to apply in this context, and it appears that no Supreme Court decision since **Nieves** has *explicitly* ruled on this issue. However, in **Commonwealth v. Miller**, 987 A.2d 638 (Pa. 2009), the Court touched on the subject. There, the Court rejected the appellant's claim "that his waiver of his right to testify was invalid," reasoning that the appellant "failed to prove that but for counsel's ineffectiveness, he would have testified." **Id.** at 660.

The prejudice standard applied by the **Miller** Court seems to have been derived from the Court's earlier decision in **Commonwealth v. Mallory**, 941 A.2d 686 (Pa. 2008), a case which addressed a trial counsel

---

[2] **Nieves** was a death penalty case and, despite Nieves' testimony at the penalty hearing, the jury decided to impose a sentence of death.

ineffectiveness claim in the context of a defendant's waiver of his right to a jury trial. In analyzing that issue, the Court opined that:

> At least in circumstances where waivers of fundamental rights are concerned, it appears that the "result of the proceeding" referred to in **Strickland** [**v. Washington**, 466 U.S. 668 (1984),] has been deemed to encompass the result of the trial stage where the alleged ineffectiveness took place, and not necessarily the ultimate verdict.

*Id.* at 703. The **Mallory** Court then held that the appropriate prejudice standard in the context of a waiver of the right to a jury trial was whether "the result of the waiver proceeding would have been different absent counsel's ineffectiveness[,]" not whether the outcome of the jury trial itself would have been more favorable for the defendant. *Id.* at 702-703. Since **Mallory**, our Supreme Court has applied the prejudice standard announced therein to other cases involving ineffectiveness in the context of the waiver of a fundamental right. *See Commonwealth v. Puksar*, 951 A.2d 267, 281-282 (Pa. 2008) (applying the prejudice standard in **Mallory** to claim that counsel ineffectively caused the appellant to unknowingly and involuntarily waive his right to present mitigation evidence at his death penalty hearing; stating, "[i]n short, he has not shown that the outcome of his waiver of mitigation would have been different but for counsel's inaction."); *Commonwealth v. Spotz*, 18 A.3d 244, 263-264 (Pa. 2011) (applying the prejudice standard announced in **Mallory** to a claim that counsel's ineffectiveness caused the appellant to unknowingly and involuntarily waive his right to counsel; stating, "[t]o establish prejudice, the

petitioner must demonstrate a reasonable probability that but for counsel's ineffectiveness, he would not have waived the right at issue.").

Based on **Mallory**, **Nieves**, and **Miller**, we conclude that the appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the *waiver proceeding* would have been different absent counsel's ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand. Accordingly, the PCRA court's determination that Appellant was not prejudiced by counsel's conduct is legally incorrect, as the court applied the wrong standard for assessing prejudice in this context. Additionally, because the PCRA court did not explicitly rule on the other two prongs of the ineffectiveness test, and did not conduct an evidentiary hearing, we are unable to determine whether Appellant's claim has arguable merit (*i.e.*, whether counsel indeed advised Appellant in the manner claimed, and whether Appellant's decision to testify was solely based on that advice), and/or whether counsel had any reasonable basis for advising Appellant not to testify. Therefore, we vacate the PCRA court's order denying Appellant's petition and remand for a hearing on this ineffectiveness claim. If, at the conclusion of that proceeding, the PCRA court determines that Appellant has proven the first two prongs of the ineffectiveness test, it shall then assess whether Appellant was prejudiced by counsel's conduct, applying the standard set forth herein.

- 10 -

While we conclude that a hearing is warranted on Appellant's first trial counsel ineffectiveness claim, we agree with the PCRA court that his other claims of counsel's ineffectiveness do not present issues of genuine fact necessitating further review. First, Appellant maintains that counsel acted ineffectively by not objecting to comments by the prosecutor during his opening and closing statements. Specifically, during his opening statement, the prosecutor said, "We obviously know that [Appellant] did this." N.T. Trial, 2/26/07, at 37. Appellant argues that this remark was an improper expression of the prosecutor's personal belief regarding Appellant's guilt. Appellant also takes issue with the prosecutor's stating, during closing arguments, that "[t]hey intended to kill this man over drug money." N.T. Trial, 3/2/07, at 41. Appellant maintains that this statement "not only emphasized a motive which had no factual basis in the record, but also indicated that petitioner was involved in other criminal activity." Appellant's Brief at 21 (citation omitted).

Even assuming that both prosecutorial remarks were improper (and, therefore, that counsel should have lodged objections to them), the record supports the PCRA court's conclusion that "the prosecutor's remarks did not prejudice [Appellant] to the extent that the jury could not weigh the evidence and render a true verdict…." PCO at 5. As our Supreme Court has stated:

> It is well-established that a prosecutor is free to present his argument with logical force and vigor so long as there is a reasonable basis in the record for the prosecutor's remarks.

Further, reversible error arises from a prosecutor's comments only where their unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

To succeed on a claim of ineffective assistance of counsel based on trial counsel's failure to object to prosecutorial misconduct, the defendant must demonstrate that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial."

*Commonwealth v. Busanet*, 54 A.3d 35, 64 (Pa. 2012) (citations omitted).

Here, Appellant claims the prosecutor's opening remark ("[w]e obviously know that [Appellant] did this") denied him the right to a fair trial because it "implied that [the prosecutor] had a special knowledge or innate ability to determine guilt based upon his position as a prosecutor, such that [Appellant's] right to be tried solely on the evidence was jeopardized…. Appellant's Brief at 25-26. We disagree. Prior to making the at-issue remark, the prosecutor described the evidence that would be presented to show that Appellant had murdered the victim. N.T. Trial, 2/26/07, at 36-37. He then stated: "We obviously know that [Appellant] did this. We will find out why." *Id.* at 37. The prosecutor went on to summarize the evidence that would be offered to prove Appellant's motive for committing the

murder.  *Id.* at 37.  In concluding his opening statement, the prosecutor declared:

> [The prosecutor]: A little bit of money, ladies and gentlemen. That is what the evidence is going to show that this is all about. That is what the evidence is going to show that that young man lost his life over.
>
> [T]he evidence is going to show that senseless killing for that senseless reason was perpetrated by that man.  And after looking at that evidence, I want you to bring him to justice for it.

*Id.* at 38-39.

The prosecutor's opening statement, read as a whole, clearly conveyed to the jury that *the evidence* would prove Appellant committed the murder. Other than the brief comment Appellant now challenges, the prosecutor did not express a personal belief regarding Appellant's guilt, or imply that the jury should convict Appellant because the prosecutor "had a special knowledge or innate ability to determine guilt based upon his position as a prosecutor."  Appellant's Brief at 25.  Instead, the prosecutor emphasized that the evidence presented at trial would prove Appellant's guilt.  Therefore, we ascertain no error in the PCRA court's determination that Appellant was not prejudiced by counsel's failure to object to the prosecutor's opening remark.  Accordingly, this claim need not be further examined on remand.

We also conclude that the prosecutor's closing argument, in which he commented that the victim was murdered "over drug money[,]" did not deny Appellant his right to a fair trial.  This remark was made during the prosecutor's discussion of Appellant's intent to kill the victim:

> [The Prosecutor]: When you shoot someone nineteen times – in fact, the Judge will instruct you that just from using a deadly weapon once on a vital area of the body you can infer the specific intent to kill.  But when you shoot him over and over and over, when you put the muzzle of a gun into his – the back of his ribs and pull the trigger, there is no doubt of your intent, ladies and gentlemen.  **They intended to kill this man over drug money**.

N.T. Trial, 3/2/07, at 41 (emphasis added).   Appellant argues that the above-emphasized remark "ascribed to [Appellant] a motive that could not reasonably be drawn from the evidence." Appellant's Brief at 26.

We disagree.   Throughout trial, the Commonwealth argued – and presented ample evidence to support – that Appellant murdered the victim to avoid paying the victim $1,300.  The prosecutor's sole reference to that money as being drug-related did not create a *new* motive that was unsupported by the evidence, as Appellant contends.  Moreover, while the prosecutor's comment may have implied other criminal conduct by Appellant, he has not demonstrated that that single statement was so prejudicial as to result in an unfair trial.  Consequently, the PCRA court did not err in denying this ineffectiveness claim without a hearing.

Accordingly, we remand for a PCRA hearing solely to address Appellant's claim that trial counsel acted ineffectively in advising him to waive his right to testify at trial.

Order vacated.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judge Donohue joins this opinion.

Judge Strassburger files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/28/2015