J-S33023-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :   IN THE SUPERIOR COURT OF
                                             :        PENNSYLVANIA

           Appellee             :
                                               :

           v.                    :
                                               :

KHAMPHOY PHOMMA,               :
                                                   :

           Appellant           :   No. 1713 EDA 2014

Appeal from the PCRA Order May 19, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0402861-2006

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE and LAZARUS, JJ.

MEMORANDUM BY DONOHUE, J.:                 **FILED JUNE 10, 2015**

Khamphoy Phomma ("Phomma") appeals from the May 19, 2014 order of the Philadelphia County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA"), without a hearing. Upon review, we affirm.

We previously summarized the facts of this case when deciding Phomma's direct appeal as follows:

> On February 1, 2006, Philadelphia Police went to an apartment building located at 6344 North Eighth Street to investigate a report of a killing inside of Apartment 304. Upon arrival, police discovered the body of Danh Nguyen. Mr. Nguyen had been stabbed and was obviously dead. An autopsy of his body revealed that he had been stabbed twice in the left chest that caused injuries to his heart and both lungs. There were also four other superficial stab wounds to the victim's body observed during the autopsy. The manner of death was deemed to be homicide.

Subsequent investigation revealed that on the night of the incident, several people, including the victim, Dat Huynh, Thai Lam, John Tieu, and someone named Thomas, had gathered at the apartment to play cards. Apparently, the victim won a lot of money during the game and some of the losers stated that they were going to get their money back.

[Phomma] was not present when the game began and appeared at the apartment later in the evening. Dat Huynh, a resident of the apartment, left prior to the killing and as he was leaving, he encountered [Phomma], Lam, and Thomas, outside his apartment. Thai Lam stated he was going to take back the money he lost to the victim and Huynh told him not to do anything to the victim because he was a close friend. When Hyunh returned, police were outside his apartment.

After Huynh departed, [Phomma] and Thai Lam entered the apartment. Lam, who had a mask covering his face, pulled out a gun and ordered everyone to get down. Contemporaneous therewith, [Phomma] went into the kitchen and ordered the victim to hand over his money. According to John Tieu, the victim ignored [Phomma] and the two men began fighting. Tieu fled when the fight started and learned that the victim had been killed the next day.

On February 2, 2006, Homicide Detective John Verrecchio, acting on information given to police, went to [Phomma's] residence to locate [Phomma's] vehicle and to speak to [Phomma] who had been identified as a suspect in the victim's death. Upon arrival, the detective observed that [Phomma's] car was parked across the street from [Phomma's] residence. He then went to [Phomma's] residence and was eventually admitted inside by [Phomma's] sister. Once inside, Detective Verrecchio told [Phomma's] sister that he wanted to speak to [Phomma]. [Phomma's] sister went to [Phomma's]

bedroom and had him come downstairs. When [Phomma] did so, Detective Verrecchio told him that there had been an incident at which time [Phomma] volunteered that he had been involved in a fight at the location mentioned by the detective.

After [Phomma] volunteered that he had been involved in the fight, Detective Verrecchio placed [Phomma] under arrest. [Phomma] was then placed inside a police vehicle by uniformed officers so that he could be transferred to the Homicide Unit at the police headquarters. Prior to leaving the scene, however, an officer approached Detective Verrecchio and told him that [Phomma] was talking about the incident. Detective Verrecchio went to [Phomma] and gave him *Miranda* warnings after which [Phomma], without questioning, stated that he stabbed the victim. [Phomma] was then transported to police headquarters where, [Phomma] gave a formal statement upon being administered and then formally waiving the rights afforded under *Miranda*.

In his statement, [Phomma] first told authorities that during the card game, he became frustrated because he had lost some money and that after losing a hand he threw his cards on top of the victim's money scattering it. The victim, who [Phomma] heard had a reputation for being tough, became incensed and approached [Phomma]. [Phomma] stated that he picked up the victim's knife after the victim punched [Phomma] in the mouth and stabbed the victim in the side of his chest. [Phomma] stated that he stabbed the victim a second time when the victim continued to come at him. [Phomma] then threw the knife down and fled the residence. As he fled, he picked up some of the money sitting on the floor.

[Phomma] recanted much of what he told police about the incident after police advised him that they wanted to ask him additional questions following their review of a statement given by another witness. During the supplemental interview,

[Phomma] stated that when he arrived at the apartment, he saw Thai Lam outside it and Lam told him that he wanted to rob the guy who had won money from him. According to [Phomma], Lam asked [Phomma] to assist in the robbery but [Phomma] refused. [Phomma] then went inside and began playing cards. During the game, Lam and a friend of the victim's got into an argument. When the victim stood up, [Phomma] believed that the victim was about to go after Lam so he grabbed the victim from behind and punched him in the back. The victim turned around and began swinging at [Phomma] who grabbed a knife and stabbed him. [Phomma] stated that he and Lam then fled the scene. [Phomma] admitted that the victim did not punch him in the face.

[Phomma] further stated that upon leaving the apartment he called 911 and told police that four black guys had entered the apartment and committed a robbery. [Phomma] thereafter told his girlfriend and another friend that he had stabbed the victim. He also discarded his bloody clothes in a sewer located across the street from his house, which police later recovered.[FN]

_____

[FN] Police recovered [Phomma's] clothing based on the information [Phomma] provided during his interview. Police also recovered the murder weapon from the scene of the incident.

*Commonwealth v. Phomma*, 122 EDA 2010, 1-4 (Pa. Super. Dec. 9, 2010) (quoting Trial Court Opinion, 3/1/10, at 2-5) (footnote citation to *Miranda* omitted).

Following a bench trial held on June 7, 2007, the trial court convicted Phomma of third-degree murder and possessing an instrument of crime for the stabbing death of Danh Nguyen. The trial court acquitted him of robbery

- 4 -

and criminal conspiracy. It sentenced Phomma on August 9, 2007 to an aggregate term of twenty to forty years of imprisonment.

The lower court reinstated Phomma's right to file post-sentence motions and direct appeal rights on December 3, 2009. Phomma filed post-sentence motions nunc pro tunc on December 16, 2009, and the trial court denied relief the same day. Phomma appealed his conviction to this Court, challenging the trial court's denial of his motion to suppress, the sufficiency of the evidence to support his conviction of third-degree murder, and discretionary aspects of his sentence. A panel of this Court affirmed his judgment of sentence in an unpublished Memorandum on December 9, 2010. The Pennsylvania Supreme Court denied Phomma's request for allowance of appeal on June 27, 2011.

Phomma, acting pro se, filed the instant timely PCRA petition on December 19, 2011. The PCRA court appointed counsel to represent Phomma, and counsel filed an amended PCRA petition on August 10, 2012 alleging that prior counsel was ineffective for failing to preserve a challenge to the weight of the evidence. The Commonwealth filed a response on March 5, 2014. On April 16, 2014, the PCRA court sent notice of its intention to dismiss Phomma's PCRA petition without a hearing, and ultimately dismissed the petition on May 19, 2014.

Phomma filed a timely notice of appeal, followed by a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(b). The PCRA court filed a responsive opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Phomma raises one issue for our review: "Did the PCRA [c]ourt err when it dismissed [Phomma]'s [a]mended PCRA [p]etition without a [h]earing even though [Phomma] properly pled and would have been able to prove that he was entitled to relief?" Phomma's Brief at 3.

We review a PCRA court's decision to determine whether the record supports it and to ensure it is free of legal error. *Commonwealth v. Walker*, 110 A.3d 1000, 1003 (Pa. Super. 2015). As stated above, the PCRA court dismissed Phomma's petition without an evidentiary hearing based upon its conclusion that the issue raised therein was meritless.

> The right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted).

Phomma raises a claim of ineffective assistance of counsel. In resolving a question of counsel's effectiveness, we begin with the

presumption that counsel rendered effective assistance. **Commonwealth v. Bomar**, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." **Id.** (citation omitted). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. **Id.**

Phomma bases his ineffectiveness claim on prior counsel's failure to preserve a weight of the evidence claim. Phomma's Brief at 8. Phomma contends that the verdict was in fact contrary to the weight of the evidence for two reasons: (1) the Commonwealth failed to disprove that he killed the victim in self-defense and (2) the Commonwealth failed to prove that he acted with the requisite malice to support his conviction of third-degree murder. **Id.** at 8-10.

The PCRA court found that both of Phomma's claims utterly lacked merit. In relation to his first argument regarding self-defense, the PCRA court found as follows:

> [Phomma's] claim that he acted in self-defense rests entirely on a portion of [Phomma's] statement to police wherein he remarked that he stabbed the victim after the victim attacked him with a knife. However, [Phomma] also told police that he advised

his girlfriend that he stabbed the victim over money and that after doing so he took money before fleeing. (N.T. 6/7/07, 94-105). In addition, other evidence established that the victim had been stabbed multiple times and struck with a blunt object, that [Phomma] admitted entering the apartment to commit a robbery, and that after the incident occurred [Phomma] took steps to cover up his involvement in the crime by making a phone call during which he blamed four black men for the killing and by throwing his bloody clothes down a sewer. (N.T. 6/7/07, 98, 105-106). The fact that this [c]ourt did not accept [Phomma's] self-serving statements does not make the verdict against the weight of the evidence. This is especially so given that the totality of the circumstances established that the killing was not committed in self-defense and that the Commonwealth met its burden of disproving that it was so committed.

PCRA Court Opinion, 9/15/14, at 6-7. Addressing Phomma's second contention in support of his weight of the evidence claim, the PCRA court found that the Commonwealth adequately proved that Phomma acted with malice based upon Phomma's use of a deadly weapon (a knife) on a vital part of the victim's body (his chest). *Id.* at 8. It further found that his attempt to hide evidence after the murder "demonstrated consciousness of guilt." *Id.*

The law is well settled:

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to

- 8 -

> determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Weathers*, 95 A.3d 908, 910-11 (Pa. Super. 2014), *appeal denied,* 106 A.3d 726 (Pa. 2015) (citation omitted).

Our review of the record comports with the facts and testimony cited above by the PCRA court. We observe that the PCRA court judge also served as the judge at trial. Because the trial court, as factfinder, was free to believe all, part or none of the evidence presented, there can be no abuse of discretion in the PCRA court's determination.

Furthermore, as stated by the trial court, "The fact-finder may infer malice and specific intent to kill based on the defendant's use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Towles*, 106 A.3d 591, 597 (Pa. 2014), *cert. denied sub nom. Towles v. Pennsylvania*, 135 S. Ct. 1494 (U.S. 2015) (citation omitted). A knife is a deadly weapon, *see Commonwealth v. Robertson*, 874 A.2d 1200, 1207 (Pa. Super. 2005), and the chest is a vital part of a person's body, *see Commonwealth v. Johnson*, 42 A.3d 1017, 1026 (Pa. 2012).

We find no error in the PCRA court's conclusion that the weight of the evidence claim was meritless and was unsupported by the record. Counsel cannot be found to have rendered ineffective assistance for failing to pursue a meritless claim. ***Commonwealth v. Eichinger***, 108 A.3d 821, 831 (Pa. 2014). As such, the PCRA court did not err by dismissing Phomma's PCRA petition without an evidentiary hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2015