J.S45039/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :     IN THE SUPERIOR COURT OF
        :             PENNSYLVANIA
        Appellee   :
        :
        v.         :
        :
ROBERTO LABOY,         :
        :
        Appellant   :     No. 2166 MDA 2014

Appeal from the PCRA Order November 21, 2014
In the Court of Common Pleas of Lebanon County
Criminal Division No(s).: CP-38-CR-0000979-2006

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:       **FILED OCTOBER 21, 2015**

Appellant, Roberto Laboy, appeals from the order entered in the Lebanon County Court of Common Pleas denying relief on his timely Post Conviction Relief Act[1] ("PCRA") petition. Appellant avers the PCRA court erred in not finding trial counsel ineffective for: (1) offering erroneous legal advice to not testify at trial; (2) failing to investigate the whereabouts of the murder weapon; and (3) failing to seek removal of two jurors. We affirm.

On direct appeal, another panel of this Court summarized the facts of the underlying crime as follows. "In the early morning of January 21, 2006, Tina Garcia and her friend, David Kern, left a bar in Lebanon City[.]"

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

*Commonwealth v. Laboy*, 211 MDA 2012 (unpublished memorandum at 1) (Pa. Super. Sept. 11, 2012). Appellant and co-defendant James T. Hower ("Co-Defendant"), "wearing parkas with fur hoods," followed them, and eventually accosted them. "Garcia heard one of the men asking Kern for his money." *Id.* Kern and Garcia told them they did not have any and continued walking.

> The men pursued Garcia and Kern, and caught up to them near a garage. Kern told Garcia to get help as there was "gonna be a problem." As she ran to knock on nearby doors, Garcia watched as the two men viciously beat Kern. In particular, Garcia observed the taller of the males, whom she later identified as [Appellant], punch Kern in the chest several times. Shortly thereafter, Kern slumped to the ground.
>
> The assailants promptly fled the scene of the attack. Garcia . . . summon[ed] the authorities, who arrived to find that Kern had died as a result of multiple stab wounds to his chest.

*Id.* at 1-2. Garcia subsequently identified Appellant in a photo array. Both Appellant and Co-Defendant were arrested and charged. We note that the Commonwealth sought the death penalty against Appellant.

The Commonwealth appealed pretrial matters to the Superior Court, and trial did not commence until May of 2011, more than five years after the incident. In "the months immediately preceding the trial," Appellant and his appointed trial counsel, Robert Daniels, Esq. ("Trial Counsel") learned Co-Defendant

> made a statement to the police that he had been given the murder weapon, which was wrapped in a bandana, by a

third party shortly after the incident, and had thrown it into a quarry near the Boscov's Department Store in Lebanon. Prior to [Appellant's] jury trial, [Co-Defendant] pled guilty to Third-Degree Murder pursuant to a plea agreement which required him to testify against [Appellant].

. . . [Co-Defendant] testified in accordance with the statement he had made to police. [Appellant] did not testify [but called witnesses.]

PCRA Ct. Op., 11/21/14, at 2.

On May 10, 2011, the jury found Appellant guilty of murder of the second degree,[2] conspiracy, aggravated assault, robbery,[3] and related offenses. On July 27th, the trial court imposed life imprisonment and a consecutive sentence of ten to twenty years' imprisonment. On September 11, 2012, this Court affirmed the judgment of sentence on direct appeal. [4] Our Supreme Court denied allowance of appeal on March 14, 2013.[5]

On May 9, 2013, Appellant filed a timely pro se PCRA petition. The

---

[2] 18 Pa.C.S. § 2502(a)(2).

[3] 18 Pa.C.S. §§ 903(a), 2702(a)(1), (4), 3701(a)(1)(i).

[4] Appellant had filed a timely post-sentence motion, which was denied. On direct appeal, Appellant claimed: (1) the Commonwealth committed **Brady** violations by withholding certain information; and (2) the evidence was insufficient to support his convictions.

[5] **Commonwealth v. Laboy**, 778 MAL 2012 (Pa. Mar. 14, 2013).

PCRA court appointed counsel, who did not file an amended petition.[6] The court held two hearings, on April 28 and May 12, 2014, at which Appellant and Trial Counsel testified. On November 21, 2014, the PCRA court issued the instant order denying relief. Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

In reviewing the denial of PCRA relief, this Court examines

["]whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." . . . [A] properly pled

---

[6] After granting Appellant's motion to substitute initial counsel, the PCRA court appointed Bret Weist, Esq., who continues to represent Appellant in this appeal.

claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Walker*, 110 A.3d 1000, 1003 (Pa. Super. 2015) (citations omitted).

"If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super. 2014), *appeal denied*, 104 A.3d 523 (Pa. 2014). In examining whether "counsel had some reasonable basis designed to effectuate his client's interest . . . we are not to employ a hindsight evaluation to determine whether other alternatives may have been more reasonable, but whether there was a reasonable basis for the course of action actually selected." *Id.* at 1027.

In this appeal, Appellant first avers "the PCRA Court incorrectly determined [T]rial [C]ounsel had a reasonable basis for advising [him] it would not be wise to testify at trial and that Appellant failed to show how he sustained prejudice by not testifying." Appellant's Brief at 18. He reasons "the PCRA Court incorrectly focuse[d] on whether [T]rial [C]ounsel had a reasonable basis for advising [him]," instead of "the primary issue of whether [T]rial [C]ounsel failed to call [him] to the stand despite [his] request to testify." *Id.* at 20. Appellant further claims he "wanted to testify . . . to clarify issues and attempt to defend against the crimes," and "was

simply seeking the opportunity to directly face the jury and permit them to hear his version of the events." *Id.* at 19. We find no relief is due.

At the PCRA hearings, Appellant testified to the following. Prior to trial, he and Trial Counsel discussed whether he should testify and discussed "the fact that if [he testified he would be] subject to being cross examined by the District Attorney and that it could be a bad decision." N.T., 4/28/14, at 7-8. Appellant decided on the last day of trial to testify and told Trial Counsel. Counsel responded "it wasn't a wise decision." *Id.* at 10. Appellant "felt as though [he] had no say," that Trial Counsel's "mind was very much made up" and that counsel "rushed things." *Id.* When asked why he wanted to testify, Appellant responded,

> I felt as though I needed to clarify some things and that I needed to in some way defend myself. And I just wanted the opportunity to sit down and face the jury and allow them to hear from my side . . . because I felt as though it weighed on their minds that I did not take the stand.

*Id.* at 9. In response to the question of why testifying would have benefited his case, Appellant stated: "I am not sure if it was going to benefit anything, but I believe that I had every right to sit on that stand and to fight for my life." *Id.* at 11. On cross-examination, Appellant conceded that Trial Counsel was concerned "from a strategy standpoint . . . about subjecting [him] to cross-examination by the Commonwealth." N.T., 5/12/14, at 16-17.

Trial Counsel confirmed he did not "think it would have been a good

idea for [Appellant] to testify" and that he advised Appellant with this opinion. *Id.* at 23. Trial Counsel stated Appellant "may have" informed him during trial of his desire to testify, but Trial Counsel did not remember the specific conversation: "I am sure we discussed it[, but] I can't sit here today and tell you exactly what was said between the two of us." *Id.* at 24-25. However, Trial Counsel also stated that if Appellant specifically requested to testify, he would have called him as a witness. *Id.*

With respect to Appellant's claim that Trial Counsel prevented him from testifying, we first note the trial transcript does not include an oral colloquy of Appellant for waiving his right to testify, and there is no written colloquy in the record.[7] The PCRA court credited Trial Counsel's PCRA hearing testimony and found, "Although [T]rial [C]ounsel did not feel that it was a good idea for [Appellant] to testify, he never told [Appellant] that he could not do so." PCRA Ct. Op. at 5-6 (citing N.T., 5/12/14, at 17). Instead, counsel merely "advised him that 'it wasn't a wise decision.'" *Id.*

The PCRA court further found Trial Counsel "had a reasonable basis for advising [Appellant] that it would not be a wise decision for him to testify at trial." PCRA Ct. Op. at 8. It held, "[T]he avoidance of opening up [Appellant] for cross-examination in a capital murder case was sound advice

---

[7] Appellant's brief states the general rule that "if a defendant voluntarily waives the right to testify after colloquy on the record, then he is precluded from claiming trial counsel was ineffective for not calling him to the stand." Appellant's Brief at 18-19. However, he does not specify whether there was a colloquy in this case.

and was reasonable trial strategy under the circumstances." ***Id.*** We reiterate that Appellant conceded Trial Counsel had a reason for advising him to not testify. We find the court's ruling is supported by the record and free of legal error.[8] ***See Walker***, 110 A.3d at 1003; ***Charleston***, 94 A.3d at 1027. Accordingly, we find no relief due on Appellant's first claim.

Appellant's second issue is whether the PCRA court erred in denying his claim that Trial Counsel was ineffective for not investigating Co-Defendant's statements about the knife. In support, Appellant asserts the following. "Co-Defendant's statements regarding the location of the alleged murder weapon [were] a key piece of evidence in the Commonwealth's case in chief." Appellant's Brief at 21. "Although [T]rial [C]ounsel did not know whether the knife could be found in the quarry, [he] did not visit the . . . quarry or conduct any independent investigation." ***Id.*** Although "a great deal of time had elapsed between the time the knife was allegedly disposed

---

[8] The PCRA court denied relief on an additional ground, that Appellant "failed to identify the substance of any testimony he could have offered to establish his innocence of [the] charges or to specify how his testimony would have affected the outcome of his case." PCRA Ct. Op. at 9. However, this Court recently held:

> [T]he appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the waiver proceeding would have been different absent counsel's ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand.

***Walker***, 110 A.3d at 1005.

in the quarry and Co-Defendant's statements," "[a]t a minimum, it would have been prudent to consider the possibility based upon Appellant's request." *Id.* "[T]he knife **may have** shed light on who was actually responsible for [the victim] Mr. Kern's death, **potentially** to the detriment of the Commonwealth's case. Also, an investigation **may have** . . . render[ed] Co-Defendant's statements unreliable or inconsistent." *Id.* at 21-22 (emphasis added). We find no relief is due.

We emphasize that Appellant avers only the possibility that an investigation would have yielded favorable information or evidence, without explaining what the new information would be. *See id.* at 21. Likewise, at the PCRA hearing, Appellant testified, "It's possible [an investigation] could have led to whether [Co-Defendant's] claims [were] reliable or if [Co-Defendant] was, in fact, deceiving authorities. Recovery of the knife . . . possibly may have shed light on who actually was responsible for Mr. Kern's homicide." N.T., 4/28/14, at 13.

Trial Counsel, on the other hand, testified at the PCRA hearing as follows. He did not investigate the truth of Co-Defendant's statements or the location of the knife. N.T., 5/12/14, at 26. He opined, "I don't see how it would have advanced his cause whatsoever," and that an investigation "would only corroborate [Co-Defendant's] story." *Id.* at 26-27. Instead, Trial Counsel reasoned, "by leaving [the whereabouts of the knife] as an open-ended question, I think that was a question for the jury to consider."

*Id.* at 21. Furthermore, Trial Counsel "cross examine[d Co-Defendant] vigorously . . . and pointed out in closing [arguments] that the police didn't attempt to retrieve the weapon." *Id.*

In denying relief, the PCRA court found Trial Counsel "articulated a reasonable basis for his failure to conduct this investigation," and that successful retrieval of the knife "would have only reinforced [Co-Defendant's] credibility to the jury." PCRA Ct. Op. at 11. The court further agreed with counsel's doubt "that physical examination of the knife, after it sat in the quarry for several years, would offer anything useful in exonerating" Appellant. *Id.* The court also found Trial Counsel's strategy, "that it was better to leave the question open in the minds of the jurors as to why the Commonwealth had not recovered the knife," "had a much greater likelihood of casting the shadow of doubt over [Co-Defendant's] testimony and was appropriate under these circumstances." *Id.* We find no error in the court's analysis. *See Walker*, 110 A.3d at 1003; *Charleston*, 94 A.3d at 1027.

In his final issue, Appellant claims the PCRA court erred in not finding Trial Counsel ineffective for failing to seek removal of two jurors, Juror 3 and Juror 11. For ease of disposition, we first summarize:

> Per the agreement of the parties, all guilt-phase witnesses were sequestered during the course of the trial, but potential penalty-phase witnesses were not sequestered. During [trial,] Juror 3 indicated that he recognized someone sitting in the audience in the Courtroom . . . . At that point, the jury was sent upstairs, Juror 3 was brought

- 10 -

back to the Courtroom, was sworn in and questioned by the Court. The Court asked Juror 3 whether the presence of the individual in the Courtroom during the guilt phase of the trial would impact his decision in any way in the event the person was to testify in the penalty phase of the proceeding. Juror 3 answered that he would still be able to be fair and impartial during the guilt phase. Neither the Commonwealth or [T]rial [C]ounsel asked any questions of Juror 3.

Later, Juror 11 related to the Court that she had gone to high school with one of the witnesses who testified during presentation of the Commonwealth's case. Juror 11 advised the Court that she had never socialized with the witness, the two were not close friends, and that they had no contact for six years since graduation. Juror 11 noted that she had not recognized the witness's name, but had recognized her face when she was called to testify. When the trial was reconvened, the Court called the Commonwealth attorney and [T]rial [C]ounsel to sidebar and notified them of the situation. We explained that Juror 11 had indicated that she would be able to continue as a fair and impartial juror despite her acquaintance with the witness. Neither the Commonwealth or trial counsel thought it necessary to question Juror 11 under the circumstances. [Appellant] now claims that he requested [T]rial [C]ounsel [to] seek removal of both jurors.

PCRA Ct. Op. at 12-13 (citations to trial transcript omitted).

At the PCRA hearing, Appellant testified that when the issues with the juror was brought to the trial court's attention, he requested Trial Counsel to seek their removal. N.T., 5/12/14, at 11-12. Appellant stated, "I simply no longer wanted them on the jury panel once they brought forth that they knew [a] possible [or] potential witness." *Id.* at 12. Trial Counsel testified he did not remember whether Appellant requested him to take action concerning the jurors, but that if Appellant did, he would have complied. *Id.*

at 28-29.

In the instant appeal, Appellant argues Trial Counsel's failure to seek removal of the jurors "was in direct contradiction to Appellant's request." Appellant's Brief at 23. Appellant further contends "Trial [C]ounsel should have, at a minimum, objected to preserve Appellant's right." *Id.* We find no relief is due.

In finding no ineffectiveness, the PCRA court opined:

> Both jurors were appropriately questioned by the Court and indicated that they would be able to remain fair and impartial in their consideration of the evidence. [Appellant] has not shown how his case was prejudiced by their remaining on the jury or how the jurors' tenuous connections with the individuals involved in the case affected the outcome of the case.

PCRA Ct. Op. at 14-15. We find no error in the PCRA court's analysis. *See Walker*, 110 A.3d at 1003.

Finally, we note that in the appellate brief, Appellant's counsel avers that after the instant notice of appeal was filed, Appellant sent him a letter, "request[ing] for the first time that four additional issues be raised in this matter." Appellant's Brief at 24. The four claims are allegations of trial counsel's and PCRA counsel's ineffectiveness. We hold all of these are waived for failure to present them first to the PCRA court. *See Commonwealth v. Henkel*, 90 A.3d 16, 26 (Pa. Super. 2014) (*en banc*) ("[P]etitioner could not raise PCRA appellate counsel's ineffectiveness for the first time on appeal."); *Commonwealth v. Bedell*, 954 A.2d 1209, 1216

(Pa. Super. 2008) (stating claims not raised in PCRA court are waived and cannot be raised for first time on appeal).

For the foregoing reasons, we affirm the order denying relief on Appellant's PCRA petition.

Order affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2015