**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERRY WALKER | : | |
| | : | |
| Appellant | : | No. 2666 EDA 2016 |

Appeal from the PCRA Order August 9, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0608421-2005

BEFORE: OLSON, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED JULY 19, 2018**

Appellant Terry Walker appeals the order of the Court of Common Pleas of Philadelphia County denying his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. This Court previously remanded this case for the PCRA court to hold an evidentiary hearing on Appellant's claim that his trial counsel was ineffective in advising him not to testify. After careful review, we affirm.

This Court previously summarized the facts of this case as follows:

> On the morning of January 20, 2005, Joseph Smith, the victim, told a friend that he was to meet Appellant later in the day because Appellant owed him $1,300. Later that afternoon, Nathaniel Robinson, who was driving by 70th Street and Woodland Avenue in Philadelphia[,] saw flashes of light, heard a loud bang from the minivan in front of him, and felt something hit his car. The mini-van stopped in the middle of the street. Mr. Robinson saw the driver, later identified as Appellant, get out of the van, look around, get back in, and make a U-turn. One of the windows of the van was blown out. Appellant stopped again, got out of the

_____

\* Former Justice specially assigned to the Superior Court.

van, opened the sliding door, and "scuffled" around, causing the van to rock back and forth. Appellant drove the van to 69th and Woodland where he pulled in at a service station. Mr. Robinson then saw Appellant go to the passenger side, stuff something down the front of his pants, and walk away slowly until he reached the end of the service station, when he broke into a run, leaving a trail of blood behind him from a gunshot wound to the hand. Later, blood from the stains found at the scene was matched to Appellant's DNA. Mr. Robinson found Mr. Smith in the van, bleeding and bound in "flex cuffs" on each of his wrists. He was covered in blood and struggling to get up.

Mr. Robinson called 9–1–1. A fire department emergency crew arrived and rushed Mr. Smith in an ambulance to the Hospital of the University of Pennsylvania about thirty-five blocks away. On the way to the hospital, the paramedic monitored Mr. Smith's level of consciousness by asking him informational questions. Mr. Smith gave the paramedic an incorrect age and the name "Phillip." He also responded eight or nine times "Terry Walker did it," or "Tell them that Terry Walker shot me." Mr. Smith lost consciousness a few blocks from the hospital and stopped answering questions. He died at 7:00 P.M., from nineteen gunshot wounds.

***Commonwealth v. Walker***, No. 910 EDA 2007, unpublished memorandum at 1–3, 981 A.2d 325 (Pa.Super. filed June 5, 2009).

On March 5, 2007, a jury convicted Appellant of first-degree murder, robbery, and possessing an instrument of crime (PIC). Thereafter, Appellant was sentenced to life imprisonment for the murder conviction, 10 – 20 years' imprisonment for the robbery conviction, and 2½ – 5 years' imprisonment for the PIC conviction, with all sentences running consecutively. On June 5, 2009, this Court affirmed the judgment of sentence and on November 25, 2009, our Supreme Court denied Appellant's petition for allowance of appeal.

On February 8, 2010, Appellant filed a *pro se* PCRA petition. The PCRA court appointed Appellant counsel, who filed multiple continuances and

eventually filed a petition to withdraw and a "no-merit letter" pursuant to *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988). However, after Appellant filed a response to the PCRA court's notice pursuant to Pa.R.Crim.P. 907, PCRA counsel filed an amended petition raising two claims for review.

On April 23, 2013, the PCRA court filed a second Rule 907 notice of its intent to dismiss Appellant's petition without a hearing. Appellant did not file a response and on July 8, 2013, the PCRA court dismissed the petition. On January 28, 2015, this Court vacated the PCRA court's order and remanded for an evidentiary hearing solely to address Appellant's claim that his trial counsel was ineffective in advising him to waive his right to testify at trial. *See Commonwealth v. Walker*, 110 A.3d 1000, 1007 (Pa.Super. 2015).

After holding evidentiary hearings on June 23, 2016 and July 12, 2016, the PCRA court ultimately denied Appellant's petition on August 9, 2016 at a hearing at which the PCRA court gave its findings of fact and law on the record. Appellant filed a timely appeal.

Appellant raises the following issues for review on appeal:

1) Whether the PCRA court erred as a matter of law by denying post conviction relief where trial counsel was ineffective for advising [A]ppellant that should he testify in his own behalf the Commonwealth could impeach him with his prior criminal record for violence and drugs, where [A]ppellant did not have any *crimen falsi* convictions, which was so unreasonable as to vitiate his knowing and intelligent decision not to testify in his own behalf?

2) Whether there was a miscarriage of justice such that the appellate court should review [A]ppellant's claim that trial counsel was ineffective for not protecting [A]ppellant's right to due process by failing to object to the Court's erroneous jury instruction on reasonable doubt?

3) Whether the trial court erred by identifying [A]ppellant in her Opinion as the driver of the vehicle in which [the] decedent was found, which is not supported by the record where the only eye[-]witness could not identify said person?

Appellant's Brief, at 4.

Our standard of review is as follows:

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a de novo standard.

***Commonwealth v. Johnson***, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (quotation marks and quotations omitted).

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in 42 Pa.C.S.A. § 9543(a)(2), which includes the ineffective assistance of counsel. In reviewing ineffectiveness of counsel claims, we are mindful of the following:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency

- 4 -

prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ... [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

**Walker**, 110 A.3d at 1003 (quoting **Commonwealth v. Johnson**, 600 Pa. 329, 966 A.2d 523, 532–33 (2009) (citations omitted)).

Appellant first claims that trial counsel was ineffective in advising him not to testify at trial and asserts that counsel mistakenly told Appellant that he could be impeached with his prior criminal record. Appellant contends that, absent this advice, he would have testified at trial. This Court has held that:

The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

**Commonwealth v. Smith**, 181 A.3d 1168, 1179 (Pa.Super. 2018) (quoting **Commonwealth v. Nieves**, 560 Pa. 529, 746 A.2d 1102, 1104 (2000) (citations omitted)).

Before trial, Appellant knowingly and voluntarily waived his right to testify during an oral colloquy with the trial court. Notes of Testimony (N.T.), 3/1/07, 187-88. At the PCRA hearing, Appellant's trial counsel, Gary Server, Esq., emphasized that he made it clear that it was Appellant's decision to decide whether he would testify at trial. Atty. Server denied that he told

Appellant he could be impeached by *crimen falsi* convictions as Appellant did not have convictions of crimes of dishonesty. Instead, Atty. Server offered other reasons for advising Appellant not to testify:

> [Atty. Server:] I told [Appellant] that he had no criminal convictions for dishonesty; therefore, he couldn't be impeached by that but I also told him if he testified and he happened to say something on the stand that Judge Hughes believed opened up the door, that he could be questioned by the Commonwealth attorney about his prior conduct, his prior actions, some of which included his convictions.
>
> I believe he had a conviction for aggravated assault and also possession with intent to deliver. I informed him that if he made certain comments, like he had been making to me during the course of preparation, that Judge Hughes certainly would have allowed the door to have been opened … and some of that prior conduct Judge Hughes might have ruled was admissible to show motive, to show lack of mistake, to show intent, things like that, things set forth under 404 B.
>
> [PCRA counsel:] Now when you say in light of some of the comments he made to you ---
>
> [Atty. Server:] Yes.
>
> [PCRA counsel:] – do you recall what some of those comments were?
>
> [Atty. Server:] I do because he said them over and over again. One of the first things [Appellant] said to me when I met him in the secured housing unit at the federal prison for the first time, he said that his faith would have prevented him from engaging in violence or having anything to do with drugs and that he was a role model to his child. I believe he had a son.
>
> Those comments were made to me several times and certainly I was concerned that he might have said something like that while he was on the stand being cross-examined and that certainly would have put us in a position where Judge Hughes might have had to consider that that door would have been opened and that

would have opened up a cross-examination to a whole wide range of subjects. It would not have been helpful to him.

N.T. PCRA hearing, 6/23/16, at 8-9.

In addition, Atty. Server also considered that Appellant might present himself poorly as a witness in his capital murder trial:

> [Commonwealth:] Can you describe [Appellant's] demeanor when you met with him?
>
> [Atty. Server:] [Appellant] is a very emotional person. He is bombastic and loud. He can be arrogant. He can be unreasonable and he can be self-righteous.
>
> [Commonwealth:] Did you consider that when you discussed with him the disadvantages of testifying?
>
> [Atty. Server:] Yes. As a matter of fact, one of the things that I discussed with [Appellant] is if he testified, the perception the jury would have of him and how that might impact if we actually had to go to a penalty hearing. That was important to me, yes.

N.T. PCRA hearing, 6/23/16, at 33.

In contrast, Appellant testified at the PCRA hearing that counsel had told him not to testify as the Commonwealth could impeach Appellant with *crimen falsi* convictions. He did not remember any conversations with Atty. Server in which he claimed that he could not have been responsible for the charged murder due to his religious beliefs.

Based on this testimony, the PCRA court concluded the following:

> Mr. Server also told [Appellant] that the decision to testify was completely his, that this is one of the five decisions [Appellant] gets to make that [Appellant] would not intrude upon. Mr. Server testified that he advised [Appellant] properly about the law, that he gave [Appellant] all the alternatives, that he told [Appellant] that [he] had the right to testify or not … **this Court finds Mr. Server's testimony credible, that he did not inform**

**[Appellant] that he had *crimen falsi*** and did not tell [Appellant] that his *crimen falsi* convictions or any other convictions would be used against him… Mr. Server advised [Appellant] that he had no *crimen falsi* that could be used against him, but that if [Appellant] took the stand and testified that he could not have committed these crimes because he is a man of faith and could not engage in violence or drugs, [Appellant] would have opened the door or could have opened the door to rebuttal regarding prior bad acts committed involving violence or drugs.

N.T. PCRA hearing, 8/9/16, at 9-11.

We will not disturb the PCRA court's credibility determinations. ***See Johnson***, ***supra***. Moreover, we cannot find that counsel's advice was unreasonable as "[o]ur jurisprudence permits the use of a defendant's prior non-*crimen falsi* conviction where it is limited to the specific rebuttal of the defendant's unsolicited testimony of his good character." ***Commonwealth v. Crosley***, 180 A.3d 761, 770 (Pa.Super. 2018). Accordingly, we conclude that the trial court did not err in dismissing Appellant's claim that counsel was ineffective in advising him not to testify.

In Appellant's remaining two claims, Appellant argues that (1) counsel was ineffective in failing to object to a certain jury instruction and (2) the trial court made an erroneous finding of fact in her opinion by identifying Appellant as the driver of the vehicle where the victim was found. Neither of these claims were properly raised before the PCRA court before Appellant appealed to this Court.

While Appellant filed several *pro se* documents seeking to raise additional claims while after counsel's amended petition had been denied and Appellant's first appeal was pending before this Court, Appellant's failure, prior

- 8 -

to his PCRA appeal, to raise these issues before the PCRA court results in waiver of these claims. ***Commonwealth v. Pitts***, 603 Pa. 1, 10, 981 A.2d 875, 880 n. 4 (2009) (finding appellant was required to raise new claims of counsel ineffectiveness after counsel sought to withdraw and the PCRA court issued notice of its intent to dismiss the petition pursuant to Pa.R.Crim.P. 907).

Moreover, we decline Appellant's request for the review of claims beyond the scope of this Court's limited remand. ***Commonwealth v. Lawson***, 789 A.2d 252, 253 (Pa.Super. 2001) (emphasizing that "where a case is remanded to resolve a limited issue, only matters related to the issue on remand may be appealed") (citation omitted). As noted above, this Court remanded this case for an evidentiary hearing solely to address Appellant's claim that his trial counsel was ineffective in advising him to waive his right to testify at trial. ***See Walker***, 110 A.3d at 1007.

For the foregoing reasons, we affirm the PCRA court's order dismissing Appellant's petition.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/18