J-S35040-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JERMAINE VILLINES, | : | |
| | : | |
| Appellant | : | No. 2862 EDA 2018 |

Appeal from the PCRA Order Entered September 28, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005660-2010

BEFORE: OLSON, J., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED AUGUST 19, 2019**

Jermaine Villines (Appellant) appeals from the order entered September 28, 2018, dismissing his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, without an evidentiary hearing. Upon review, we affirm in part, vacate in part, and remand this matter for proceedings consistent with this memorandum.

On September 17, 2009, Appellant's cousin, William Villines ("Villines"), shot Anwar Conyers outside the home of a mutual friend. Pertinent to this appeal, testimony at trial revealed that just seconds before Villines opened fire on Conyers, Appellant, who was standing next to Villines at the time, told Villines "green light, hit him." ***Commonwealth v. Villines***, 81 A.3d 1005 (Pa. Super. 2013) (unpublished memorandum). Based on statements

---

* Retired Senior Judge assigned to the Superior Court.

provided to police by witnesses, a warrant was issued for Villines's arrest and

Villines was later apprehended.

> Appellant was not arrested until January 7, 2010, after Villines gave a statement to the police implicating him in the crime. Appellant was charged with murder, conspiracy, and several violations of the Uniform Firearms Act.[3] Appellant and Villines were jointly tried by a jury sitting before the Honorable M. Teresa Sarmina.
>
> _____
>
> [3] Judgments of acquittal were entered on the charges of firearms not to be carried without a license, carrying a firearm on a public street, and possession of an instrument of crime.

*Id.*

At trial, an issue arose regarding Appellant's decision not to testify. After being informed by trial counsel that Appellant did not wish to testify on his own behalf, the trial court engaged Appellant in an on-the-record colloquy regarding Appellant's waiver of his right to testify. The record reveals, *inter alia*, the following exchange between trial counsel, the trial court, Appellant, and the Commonwealth.

> **[Trial court]**: Did anybody make any representations to you as to why you should not take the stand?
>
> **[Appellant]**: Representations?
>
> **[Trial court]**: Meaning, if you testify here's what will happen, things of that nature.
>
> **[Appellant]**: No, not in those words.
>
> **[Trial court]**: Well, something similar?
>
> **[Appellant]**: I think it's a matter of opinion.

- 2 -

**[Trial court]**: Okay.

**[Trial counsel]**: I think he's saying I expressed my opinion.

**[Trial court]**: Is that what you're saying?

**[Appellant]**: Yeah.

**[Trial court]**: Well, did you give legal advice that if you do this, here's what's going to happen or things of that nature, [trial counsel]?

**[Trial counsel]**: We discussed the potential that if he were [to] testify that certain doors might be opened, that perhaps his criminal record could come in for reasons other than impeachment. He doesn't have any *crimen falsi* but he's got convictions for drugs and some other things. Depending upon what he says.

**[Trial court]**: Why would those convictions come in?

**[Trial counsel]**: In particular, the conviction for drugs might open -- he might open the door if certain questions were to be asked of him that he would deny, and then [the Commonwealth] might find a reason to want to ask the [trial c]ourt to allow his prior record to come in.

**[Trial court]**: It's not likely that your prior record would come in.

**[Trial counsel]**: I agree.

**[Trial court]**: Although there is a possibility. Do you understand that, if that was affecting your decision?

**[Appellant]**: Yes.

**[Trial court]**: The only thing ordinarily that can be brought in, as a matter of right, would be if you had convictions involving dishonesty, which I understand you do not. So what I understand, is that correct or not correct?

**[Trial counsel]**: He does have an escape.

**[Commonwealth]**: Yeah.

- 3 -

**[Trial counsel]**: That might come in on the issue of flight.

**[Trial court]**: That has to do with dishonesty.

**[Trial counsel]**: Also there's a possession of firearms on another occasion. That could possibly come in.

**[Trial court]**: Why would that come in?

**[Commonwealth]**: Well, it would just be my position that … if a door was opened, for instance, when he said, I've been in a situation like this before. I'm actually not seeking to enter his [possession with the intent to deliver (PWID)] conviction. I don't think it's necessary and I'm not asking for it. But if there was something along those lines, like, I've never done anything -- you know, whatever, I don't know. The suggestion that the door could be opened is always a possibility.

**[Trial court]**: It is. It's not likely that your prior convictions would come in just as a matter of course, if that was informing your decision or affecting your decision as to not testifying in this case.

**[Appellant]**: I don't understand. He just said the escape would fall under dishonesty. Am I wrong?

**[Commonwealth]**: I believe it's *crimen falsi*. Escape is *crimen falsi.*

**[Trial court]**: Do you have case law on escape being *crimen falsi*?

**[Commonwealth]**: No.

**[Trial court]**: It may or may not come in. So if that's the only thing affecting your decision to go ahead and not testify, we can make a decision over the luncheon recess.

**[Trial counsel]**: The other thing that worries me is the possession of prohibited offensive weapon and firearms. If he were to say something to the effect of, I didn't possess a gun, I don't possess guns, generally speaking, then you might allow those convictions to come in. They come in to show access --

**[Trial court]**: If he ended up saying, I've never had a weapon in my life or something like that.

**[Trial counsel]**: That sort of thing, yes. That's what I had discussed with [Appellant].

**[Trial court]**: So there's that possibility. So if you advised him properly, I guess he wouldn't be foolish enough to say something like, never in my life have I had any weapon. Other than saying something like that, which then makes it true because you have – you've been convicted of it at least – then that would, as they say, open the door to [the Commonwealth] being able to say, oh, never had a weapon? What about this time? Weren't you convicted of such and such? [The Commonwealth] probably wouldn't even be allowed to say that. [The Commonwealth would] have to bring it in through the files. But if that's what's making you --and there might be a number of reason why you have decided --

**[Appellant]:** No, that's it.

**[Trial court]**: That's the only reason?

**[Appellant]:** That's it.

**[Trial court]**: Do you want time to discuss it further with [trial counsel]?

**[Appellant]:** Yeah, that would be helpful.

**[Trial court]**: Okay. We'll go ahead and break for lunch now. Have a seat. In the meantime, maybe [the Commonwealth] can call [its] appeals unit and see if escape under the circumstances presented here would constitute *crimen falsi*, which I don't know that it's that clear.

**[Commonwealth]**: I'll go down and research it.

* * *

**[Trial court]**: So during this break, [Appellant] will be put in the booth to speak with [trial counsel] about the decision to testify or not to testify, and [the Commonwealth will] call [its] office.

**[Commonwealth]**: I'll go downstairs and run a quick Lexis check.

**[Trial court]**: Okay.

(Whereupon, a luncheon recess is taken.)

**[Trial court]**: Good afternoon. [Appellant], if you would stand back up. You've had time now to discuss it with [trial counsel] with the understanding that it is a very slim and rare possibility that your prior convictions would come in against you in any way. So knowing and understanding all of that, do you wish to testify?

**[Appellant]**: No, ma'am.

**[Trial court]**: All right. So who's made this decision, [Appellant]?

**[Appellant]:** I have.

N.T., 1/21/2011, at 114-22. The trial court asked several follow-up questions before ultimately finding Appellant's decision not to testify was knowingly, intelligently, and voluntarily made. *Id.* at 123. There was no additional mention of the conversation that Appellant had with counsel during the break, if Appellant did indeed have any *crimen falsi* convictions, and what case law, if any, the Commonwealth was able to procure on this subject. Trial then resumed.

Upon the conclusion of trial, Appellant was convicted of third-degree murder and conspiracy. On March 17, 2011, Appellant was sentenced[1] to 20

---

[1] Pertinent for reasons that become clear *infra*, at sentencing, Appellant spoke at length about his decision not to testify, what influenced that decision, and his regret in not taking the stand. In large part, Appellant attributed his decision not to testify to his concern that his testimony would be used to convict his co-defendant and cousin, Villines. **See** N.T., 3/11/2017, at 21 (Appellant stating at sentencing that "If [he] would have got up there,

to 40 years' imprisonment for third degree-murder and a concurrent term of 10 to 20 years' imprisonment for conspiracy, followed by a consecutive 10 years of probation.

This Court affirmed Appellant's judgment of sentence and our Supreme Court denied his petition for allowance of appeal. *Villines*, 81 A.3d 1005, *appeal denied*, 781 A.2d 1091 (Pa. 2013). On April 29, 2014, Appellant filed *pro se* a timely PCRA petition. Counsel was appointed and filed multiple amended PCRA petitions.[2] On August 23, 2018, the PCRA court issued a notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907, and on September 28, 2018, the PCRA court dismissed Appellant's petition. Appellant timely filed a notice of appeal.[3]

On appeal, Appellant sets forth two issues for our review, which we consider mindful of the following. "On review of orders denying PCRA relief, our standard is to determine whether the PCRA court's ruling is free of legal error and supported by the record." *Commonwealth v. Boyer,* 962 A.2d 1213, 1215 (Pa. Super. 2008).

---

[Villines] definitely would have got found guilty of first-degree murder, and [he] ain't [*sic*] want to be the reason.").

[2] Counsel later withdrew and new counsel was assigned. However, upon Appellant's request to proceed *pro se*, a *Grazier* hearing was held, *see Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), and counsel was subsequently removed. Appellant was later assigned new counsel, who presently represents Appellant on appeal.

[3] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

- 7 -

In his first issue, Appellant argues the PCRA court abused its discretion by dismissing his PCRA petition without a hearing, asserting that he properly established that trial counsel rendered ineffective assistance of counsel when counsel erroneously informed Appellant that if Appellant elected to testify on his own behalf at trial, he could be impeached[4] with a prior escape conviction. Appellant's Brief at 8. Appellant argues that, because the crime of escape is not *crimen falsi*,[5] trial counsel misadvised him that this conviction would be admissible if he chose to testify. *Id.* at 9-10. Appellant asserts that he was "considering testifying but was discouraged from testifying" based on trial counsel's advice. *Id.* at 8. Thus, according to Appellant, he was prejudiced "because he was unable to explain what words, if any, were uttered to [Villines] prior to the shooting of [the victim]." *Id.*

In considering this issue, we observe that

> [t]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the

---

[4] ***See*** Pa.R.E. 609(a) ("For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict, or by plea of guilty or *nolo contendere*, shall be admitted if it involved dishonesty or false statement."). ***See also Commonwealth v. Moser***, 999 A.2d 602, 607 (Pa. Super. 2010) ("Crimes involving dishonesty or false statement [are] commonly referred to as *crimen falsi* crimes.")

[5] Case law from this Commonwealth supports Appellant's averment. ***See Commonwealth v. Dale***, 836 A.2d 150, 155 (Pa. Super. 2003) ("Dale was unable to find any support for his argument that the crime of escape is a *crimen falsi* crime, … and we also found none. Moreover, we fail to see how escape meets the requirements for a crime of *crimen falsi*.")*.*

responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Walls*, 993 A.2d 289, 295 (Pa. Super. 2010) (citations omitted). In addition, we point out that

> [i]t is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (internal citations omitted).

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000) (citations omitted).

In its Rule 1925(a) opinion, the PCRA court conceded that trial counsel "stated that escape may be *crimen falsi*."[6]  PCRA Court Opinion, 1/30/2019, at 5.    However, the court nonetheless found that Appellant "voluntarily waived his right to testify."  *Id.*

> [The trial c]ourt requested case law supporting [the proposition that escape is a *crimen falsi* crime], and none was provided. T[he trial c]ourt advised [Appellant] that it was "not likely" that his prior record would be admissible, unless [Appellant] "opened the door" to such evidence while testifying.  [Appellant] still chose not to testify.  He understood that the decision regarding testifying was his alone to make.
>
> Additionally, at the March 17, 2011 sentencing hearing, during allocution, [Appellant] stated that the main reason he chose not to testify was out of concern that he might have inculpated [Villines] of these crimes because "[i]f [Appellant] would have got up there, [Villines] definitely would have got found guilty of first-degree murder, and [Appellant] ain't [*sic*] want to be the reason."  Therefore, as [Appellant] cannot establish that it was trial counsel's advice, as opposed to his own motivation not to incriminate [Villines] that caused him not to testify in his defense, this claim failed.

*Id.* at 5-6.

In this case, while the record indicates the trial court was skeptical as to whether escape constituted a *crimen falsi* offense, there was no clear confirmation on the record by any party or the trial court to settle this confusion.  Indeed, it appears that Appellant was under the impression that

---

[6] We acknowledge that trial counsel initially stated that Appellant did **not** have any *crimen falsi* convictions. **See** N.T., 1/21/2011, at 115.  However, counsel later backtracked on this statement when he advised the trial court that Appellant had an "escape" conviction upon the court's inquiry as to whether Appellant had any "convictions involving dishonesty[.]"  **Id.** at 116.

his counsel's position was that escape **is** a *crimen falsi* crime. ***See*** N.T., 1/21/2011, at 117 (Appellant stating on the record "I don't understand. [Trial counsel] just said the escape would fall under dishonesty. Am I wrong?").

Even more problematic is the PCRA court's finding that Appellant was unable to establish that his motivation not to testify was based on counsel's advice as opposed to his desire not to implicate his cousin and co-defendant, Villines. The record does not firmly support this finding. While Appellant later indicated at his sentencing hearing that he did not want to testify and be the "reason" Villines was convicted, Appellant clearly and unequivocally stated during the aforementioned colloquy that his decision not to testify was based on trial counsel's advice regarding his prior convictions.[7] ***Id.*** at 119-120. ***See***

---

[7] We note that, unlike trial counsel's assertions concerning Appellant's escape conviction, counsel's statement that the Commonwealth may be permitted to ask questions about Appellant's criminal past if Appellant "opened the door[,]" N.T., 1/21/2011, at 115, was accurate advice.

> Evidence that might otherwise be inadmissible may be introduced for some other purpose, particularly where [a defendant's] own testimony "opens the door" for such evidence to be used for impeachment purposes. ***See*** Pa.R.E. 607(b) ("The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules."). "A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." ***Commonwealth v. Nypaver***, 69 A.3d 708, 716–17 (Pa. Super. 2013) (citations omitted). Further, it is noteworthy that trial judges retain wide latitude as to the scope of cross-examination[.]

***Commonwealth v. Murphy***, 182 A.3d 1002, 1005 (Pa. Super. 2018).

*Commonwealth v. Walker*, 110 A.3d 1000, 1005 (Pa. Super. 2015) (concluding that "the appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the *waiver proceeding* would have been different absent counsel's ineffectiveness") (emphasis in original).

Based upon the foregoing, we find "[a]t a minimum, the claim raises genuine issues of material fact which cannot be resolved on the existing record." *Id.* Specifically, there is an issue of material fact as to whether, following the trial court's recess for lunch, trial counsel was able to clarify that escape did not constitute a *crimen falsi* crime. Additionally, trial counsel's testimony regarding his conversations with Appellant and counsel's understanding of why Appellant chose not to testify is of equal importance to resolving this claim. Thus, we conclude that Appellant is entitled to an evidentiary hearing in order to attempt to prove that "counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf."[8] *Nieves*, 746 A.2d at 1104; *See also Commonwealth v. Savage*, 695 A.2d 820, 825 (Pa. Super. 1997) ("When an arguable claim of ineffective assistance

---

[8] To be clear, this Court's decision to remand this case in no way reflects this Court's opinion on whether Appellant is entitled to relief on this issue; Appellant is still required to prove all three prongs of the ineffective assistance of counsel standard in order to be entitled to PCRA relief. We merely recognize that a genuine issue of material fact exists, warranting an evidentiary hearing on this claim.

of counsel has been made, and there has been no evidentiary hearing in the [PCRA court] to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing.").

Turning now to Appellant's remaining claim, Appellant contends trial counsel was ineffective for failing to preserve properly a discretionary-aspects-of-sentencing claim for direct appeal. Appellant's Brief at 11. In this case, although trial counsel filed a post-sentence motion requesting the trial court reconsider his sentence, on appeal, this Court found that the boilerplate averments in Appellant's motion resulted in waiver of his discretionary aspects issue. *See Villines*, *supra*.

Instantly, the PCRA court concluded that Appellant satisfied the first two prongs of the ineffective assistance of counsel test, but held that Appellant was not prejudiced. Trial Court Opinion, 1/30/2019, at 6-8. On appeal, Appellant asserts he was prejudiced by counsel's actions because (1) "[t]he sentence imposed is excessive and unreasonable and shocks the conscience[;]" and (2) the trial court "did not properly explain how the sentence imposed was consistent with the protection of the public or how the sentence would serve Appellant's rehabilitative needs." Appellant's Brief at 13. We address these arguments sequentially.[9]

---

[9] Because Appellant's arguments challenge the discretionary aspects of his sentence, we bear in mind the following.

In this case, the trial court sentenced Appellant to 20 to 40 years' incarceration, a standard-range sentence and 10-20 years' concurrent incarceration for conspiracy. The latter sentence was below the mitigated range of the sentencing guidelines.[10] This Court has long held that a claim that a standard range sentence is excessive fails to raise a substantial question. *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013).

---

It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely [filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

[10] With Appellant's prior record score of five and an offense gravity score of 14 for both third-degree murder and conspiracy to commit murder, the standard-range sentence for both crimes, using a "deadly weapon possessed" enhancement, is 201 to 240 months' incarceration.

Even if he raised a substantial question, Appellant's claim fails as the record before us reflects the following. Prior to sentencing, the trial court was apprised of the guideline ranges for each of the crimes Appellant was convicted. N.T., 3/17/2011, at 12. Furthermore, the trial court noted that there was a pre-sentence investigation (PSI) report[11] and prior-record-score computation that had been created. *Id.* at 3. Moreover, the trial court heard statements made by Appellant, his counsel, and the Commonwealth, as well as listened to a victim impact statement. Most notably, upon sentencing Appellant to the aforementioned periods of incarceration, against the recommendation of the Commonwealth, Appellant's sentences of incarceration were ordered to run **concurrently** with one another.

In light of the foregoing, we conclude the trial court did not abuse its discretion in sentencing Appellant. *See Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) ("[W]here the sentencing court imposed a standard-range sentence with the benefit of a [PSI] report, we will not consider the sentence excessive. In those circumstances, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory

---

[11] "[W]here the sentencing judge had the benefit of a [PSI] report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1038 (Pa. Super. 2016).

factors.") (some quotation marks omitted). Nor has Appellant demonstrated to this Court that "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (quoting *Disalvo*, 70 A.3d at 903); *see also Commonwealth v. Mouzon*, 812 A.2d 617, 620 (Pa. 2002) ("Traditionally, the trial court is afforded broad discretion in sentencing criminal defendants 'because of the perception that the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.'") (citation omitted).

Lastly, while we acknowledge that the trial court failed to put forth reasons on the record for the sentence it imposed,[12] the trial court acknowledged the existence of a PSI report in this case and thus, as set forth *supra*, is presumed to have considered and weighed all relevant facts. *See Commonwealth v. Fowler*, 893 A.2d 758, 766-67 (Pa. Super. 2006) ("[T]he sentencing court must state its reasons for the sentence on the record. The sentencing judge can satisfy the requirement that reasons for imposing [the] sentence be placed on the record by indicating that he or she has been

---

[12] *See Commonwealth v. Flowers*, 149 A.3d 867, 871 (Pa. Super. 2016) (noting that an appellant raises "a substantial question for our review by asserting that the trial court failed to state adequate reasons on the record for [an a]ppellant's sentence").

informed by the [PSI] report[,] thus properly considering and weighing all relevant factors.") (citations omitted).

Because our review reveals that Appellant's sentence was neither manifestly excessive nor the product of the trial court's abuse of its discretion, Appellant has failed to establish that he was prejudiced by his counsel's failure to preserve his sentencing claim. Thus, Appellant is not entitled to relief on this claim.

Accordingly, we vacate the order in part and remand this matter for an evidentiary hearing on Appellant's issue concerning the advice received from trial counsel regarding Appellant's decision to testify on his own behalf, and affirm the September 28, 2018 order of the PCRA court in all other respects.

Order affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/19