J-S32019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAIVON HEYWARD | : | |
| | : | |
| Appellant | : | No. 1887 EDA 2019 |

Appeal from the PCRA Order Entered June 5, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012398-2013

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    Filed: November 5, 2020

Appellant, Daivon Heyward, appeals from the order entered in the Philadelphia County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court opinion set forth the relevant facts and procedural history of this appeal as follows:

> On July 17, 2013, at approximately 11:00 p.m., Gregory Smith, the victim, went to see his cousin to invite him to play pool.  Smith went to the area of Germantown Avenue and Wister Streets near the Sugar Stick Bar and Wister Plaza.  At that time, Smith was dating [Appellant's] mother, Dawn Heyward ("Dawn"), Smith lived with her and [Appellant], who was known in the neighborhood as "Dai" or "Dai Dai."  Smith had multiple prior physical altercations with both [Appellant] and Dawn over the past month.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

At nearly midnight, [Appellant] arrived at the above location, coming from Manheim Street and crossing Germantown Ave. [Appellant] approached Smith, who was sitting on the wall outside the parking lot of the Wister Street Plaza. [Appellant] said something to Smith, who then began walking away on Wister Street. [Appellant] followed behind, pulled out a gun, and shot twice at Smith, who then fell to the ground on Wister Street. [Appellant] ran away, but then returned and fired additional shots, one of which struck the fallen Smith as he was laying on the ground. [Appellant] fled across the plaza through an alleyway. Smith was pronounced dead on the scene by medical units. [Appellant] was identified as the shooter by two identifying witnesses, Kyron Shorter and Shahere "Diamond" Jackson-McDonald.

At trial, both Shorter and McDonald testified as eyewitnesses to the murder. McDonald was questioned about receiving any benefit in her own misdemeanor prostitution case in exchange for testifying. She also testified she told Sylvester Mitchell about the shooting the day after it happened and that he urged her to speak with detectives. Detectives also testified that they obtained [Appellant's] phone records through a search warrant. The FBI's Agent Shute testified that he reviewed the cell site location information obtained and determined that [Appellant's] phone was in the proximate location of the murder at the time of the crime. On November 3, 2014, after a week-long trial, a jury … found [Appellant] guilty of first-degree murder, [violations of the Uniform Firearms Act], and [possessing an instrument of crime]. He was sentenced to life imprisonment for the charge of murder and no further penalty for the remaining charges. [Appellant] filed an appeal. On July 22, 2016, the Superior Court affirmed [Appellant's] judgment of sentence. On December 21, 2016, the Pennsylvania Supreme Court denied [Appellant's] request for *allocatur*.

On November 24, 2017, [Appellant] filed a [timely] *pro se* PCRA petition. [PCRA counsel] entered her appearance on April 18, 2018. On December [9], 2018, [PCRA counsel] filed an Amended PCRA petition….

*     *     *

On February 19, 2019, the Commonwealth filed a Motion to Dismiss. On May 7, 2019, [the PCRA c]ourt sent [Appellant] a Notice of Intent to Dismiss Pursuant to [Pa.R.Crim.P.] 907. On June 5, 2019, [the PCRA c]ourt dismissed [Appellant's] petition based upon lack of merit.

(PCRA Court Opinion, filed December 20, 2019, at 1-3).

Appellant timely filed a notice of appeal on June 28, 2019. The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant did not file one.

Appellant raises six issues for our review:

Were Appellant's rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, [Section] 9 of the Pennsylvania Constitution violated by counsel's ineffective failure to timely notice an alibi defense and call [an] alibi witness, Niare Neal?

Were Appellant's rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, [Section] 9 of the Pennsylvania Constitution violated by counsel's ineffective advice that Appellant not testify on his own behalf?

Were Appellant's rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, [Section] 9 of the Pennsylvania Constitution violated by counsel's ineffective failure to interview and call Christina Douglas?

Were Appellant's rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, [Section] 9 of the Pennsylvania Constitution violated by counsel's ineffective failure to develop and present evidence of an alternative suspect which would have established reasonable doubt?

Were Appellant's rights pursuant to the Sixth and

Fourteenth Amendments of the U.S. Constitution and Article 1, [Section] 9 of the Pennsylvania Constitution violated by counsel's ineffective failure to interview Jackson-McDonald prior to trial about her "special" relationship with Mitchell and impeach her at trial with that information?

Did the cumulative impact of multiple instances of ineffective assistance of counsel deprive Appellant of his Sixth and Fourteenth Amendment rights to a fair trial and due process of law?

(Appellant's Brief at 3-4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We do not give the same deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190 (Pa.Super. 2012).

To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. We stress that an evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness.

**Commonwealth v. Roney**, 622 Pa. 1, 17-18, 79 A.3d 595, 604-05 (2013), *cert. denied*, 574 U.S. 829, 135 S.Ct. 56, 190 L.Ed.2d 56 (2014) (internal

citations and quotation marks omitted).

In his first issue, Appellant argues trial counsel retained an investigator over one year prior to trial. Appellant asserts the investigator interviewed a potential alibi witness, Niare Neal, who claimed that Appellant was with him at his residence at the time of the shooting. Appellant further asserts that Mr. Neal told the investigator that he was available and willing to testify on Appellant's behalf at trial. Despite Mr. Neal's statements to the investigator, Appellant complains that trial counsel failed to file a timely notice of an alibi defense. Appellant insists trial counsel knew "his client wanted him to present an alibi defense and this specific witness." (Appellant's Brief at 14). Appellant contends Mr. "Neal came to Appellant's trial voluntarily, without having been subpoenaed. He was obviously willing to testify then." (*Id.* at 13). Based upon the foregoing, Appellant maintains trial counsel's decision not to pursue an alibi defense was unreasonable.

Appellant also avers that he suffered prejudice as a result of trial counsel's failure to present Mr. Neal, because "the jury was left completely unaware that Appellant even had an alibi." (*Id.* at 16). Appellant emphasizes that "[b]ut for counsel's ineffectiveness, the jury would have heard the alibi witness which very likely would have established Appellant's actual innocence." (*Id.* at 17). Appellant concludes trial counsel was ineffective for failing to utilize an alibi defense by calling Mr. Neal as a witness. We disagree.

Pennsylvania law presumes counsel has rendered effective assistance.

*Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Williams, supra*.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome. In [**Kimball, supra**], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002)

(some internal citations and quotation marks omitted).

Regarding counsel's preparation for trial:

Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. Counsel's unreasonable failure to prepare for trial is an abdication of the minimum performance required of defense counsel. The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance.

*Commonwealth v. Johnson*, 600 Pa. 329, 350-51, 966 A.2d 523, 535-36

(internal citations and quotation marks omitted).

For claims of ineffectiveness based upon counsel's failure to call a witness:

A defense attorney's failure to call certain witnesses does not constitute *per se* ineffectiveness. In establishing whether defense counsel was ineffective for failing to call witnesses, a defendant must prove the witnesses existed, the witnesses were ready and willing to testify, and the absence of the witnesses' testimony prejudiced petitioner and denied him a fair trial.

*Commonwealth v. Cox*, 603 Pa. 223, 267-68, 983 A.2d 666, 693 (2009)

(internal citations omitted). A petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of

the case." ***Commonwealth v. Gibson***, 597 Pa. 402, 441, 951 A.2d 1110, 1134 (2008).

> Further, a PCRA petitioner's request for an evidentiary hearing
>
>> must include a certification, signed by the petitioner, as to each intended witness, identifying the witness's name, address, date of birth, the expected substance of his or her testimony, and any documents material to that testimony. 42 Pa.C.S. § 9545(d)(1). Failure to substantially comply with this requirement will render the proposed witness's testimony inadmissible. ***Id.***

***Commonwealth v. Lippert***, 85 A.3d 1095, 1097 (Pa.Super. 2014) (quoting ***Commonwealth v. Robinson***, 596 Pa. 580, 581, 947 A.2d 710, 711 (2008)).

Instantly, Appellant's amended PCRA petition includes a copy of the report from private investigator Richard Strohm to trial counsel. The report describes Mr. Strohm's interview with Mr. Neal as follows:

> He informed us that [Appellant] was staying with him at his residence and he was at his residence during the time of the shooting.
>
> He stated that the only time [Appellant] left the house that day was for approximately (1) hour when he went to see his son, Jayden Heyward, at his baby's mother's house, who lived around the block.
>
> He is also willing to appear in court to testify on behalf of [Appellant].

(Amended PCRA Petition, filed 12/9/18, at Exhibit P1).

Appellant's amended PCRA petition also includes a certification stating that if the PCRA court conducted an evidentiary hearing on the matter, Mr. Strohm "will testify consistent with his report (P1)." (***Id.*** at 53). Significantly,

the certification does not include any mention of calling the alleged alibi witness, Mr. Neal, as a witness at an evidentiary hearing. Rather, the certification indicates that Appellant himself would testify that "Neal was present and willing to testify during [Appellant's] trial but was not called by the defense." (*Id.* at 54).

After reviewing the amended petition, the PCRA court emphasized that Appellant did not include Mr. Neal on his list of witnesses for the evidentiary hearing. (*See* PCRA Court Opinion at 6). Absent testimony from Mr. Neal, the PCRA court noted that Appellant's ineffectiveness claim depended on the hearsay assertions within Mr. Strohm's report. (*Id.*) On this record, the PCRA court concluded Appellant could not demonstrate trial counsel's ineffectiveness for failing to call Mr. Neal as a witness. We cannot say the PCRA court erred in this regard.

While the investigator and his report establish Mr. Neal's purported availability and willingness to cooperate in October 2013, it does not necessarily follow that Mr. Neal was still available and willing to cooperate when trial commenced in October 2014. Although Appellant now claims Mr. Neal subsequently appeared at trial voluntarily, such statement does not amount to confirmation of Mr. Neal's willingness to testify. Without a certification indicating that Mr. Neal himself was willing to testify to these circumstances at an evidentiary hearing, the trial court correctly determined that Appellant failed to establish the arguable merit prong of this

ineffectiveness claim. ***See Cox, supra***; ***Lippert, supra***.

In his second issue, Appellant argues he could have testified on his own behalf to establish his alibi. Appellant acknowledges he decided to waive his constitutional right to testify at trial, but he insists his waiver was not intelligent due to inadequate advice from trial counsel. Specifically, Appellant maintains trial counsel did not discuss the advantages and disadvantages of the waiver. Instead, trial counsel merely advised him to "tell the court he did not want to testify when the judge asked him and to let [trial counsel] do all the talking." (Appellant's Brief at 22). Appellant asserts his responses during the court's waiver colloquy "only established that he followed counsel's instructions and not that his waiver was knowing and intelligent." (***Id.***)

Appellant contends trial counsel's advice was unreasonable where Appellant's testimony could have: 1) established his alibi; 2) elaborated on a motive for his mother to have committed the murder; 3) refuted the Commonwealth's evidence regarding the cell phone records; and 4) informed the jury that the police used physical force to coerce Appellant into providing his cell phone. Additionally, Appellant avers the outcome of his waiver proceeding would have been different but for counsel's ineffectiveness, because Appellant "wanted to testify on his own behalf and had counsel not discouraged him from doing so, he would have testified." (***Id.*** at 26). Appellant concludes trial counsel was ineffective for advising him not to testify

at trial.[2]  We disagree.

"The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel." ***Commonwealth v. Michaud***, 70 A.3d 862, 869 (Pa.Super. 2013).

> In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

***Id.*** (quoting ***Commonwealth v. Nieves***, 560 Pa. 529, 533, 746 A.2d 1102 (2000)).

"In addition, where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand." ***Commonwealth v. Rigg***, 84 A.3d 1080, 1086 (Pa.Super. 2014).  "A defendant will not be afforded relief where he voluntarily waives the right to take the stand during a colloquy with the court, but later claims that he was prompted by counsel to lie or give certain answers."  ***Commonwealth v. Lawson***, 762 A.2d 753, 756 (Pa.Super. 2000), *appeal denied*, 566 Pa. 638, 781 A.2d 141 (2001).

---

[2] Appellant correctly cites ***Commonwealth v. Walker***, 110 A.3d 1000 (Pa.Super. 2015), *appeal denied*, 633 Pa. 756, 125 A.3d 777 (2015), for the proposition that "the appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the waiver proceeding would have been different … not whether the outcome of the trial itself would have been more favorable…."  (Appellant's Brief at 25-26).

Instantly, the Commonwealth rested its case, and the trial court conducted a colloquy regarding Appellant's right to testify. (**See** N.T. Trial, 10/30/14, at 126-30). During the colloquy, the following exchange occurred:

> THE COURT: So I need to ask you these specific questions. First. Have you discussed with [trial counsel] the decision whether or not you should testify?
>
> [APPELLANT]: Yes.
>
> THE COURT: After discussing that with [trial counsel], have you, on your own, made a decision whether or not to testify, and just tell me yes or no?
>
> [APPELLANT]: Yes.
>
> THE COURT: What decision have you reached?
>
> [APPELLANT]: Not to testify.
>
> THE COURT: Are you satisfied with your attorney's advice and representation?
>
> [APPELLANT]: Yes, I am.

(**Id.** at 130).

The PCRA court reviewed Appellant's colloquy and determined Appellant's decision not to testify was knowing, voluntary, and intelligent. (**See** PCRA Court Opinion at 7). In light of the applicable case law, the PCRA court's conclusion is proper. **See Rigg, supra**; **Lawson, supra**. Therefore, there is no arguable merit to Appellant's claim that trial counsel was ineffective in conjunction with Appellant's decision not to testify at trial.

In his third issue, Appellant contends that Christina Douglas is the mother of his child. Appellant relies on the private investigator's pretrial

- 12 -

report for the proposition that trial counsel was aware that, at some point on the day of the murder, Appellant purportedly went to see his child at Ms. Douglas's residence. Despite this information, the investigator and trial counsel did not interview Ms. Douglas or subpoena her to testify at trial. Had he inquired further, Appellant insists trial counsel "would have learned that [Ms.] Douglas had evidence that would be helpful for the defense." (Appellant's Brief at 28). Although Appellant concedes Ms. Douglas "currently has no specific recollection of the night in question, Appellant argues "her memory of the night in question would have still been fresh" if trial counsel had facilitated her interview in a timely manner. (*Id.*) Appellant concludes trial counsel was ineffective for failing to interview and call Ms. Douglas as a witness at trial. We disagree.

Instantly, Appellant's amended PCRA petition includes a signed statement from Ms. Douglas. Significantly, Ms. Douglas admits that she cannot remember what happened on the night of the murder:

> I never spoke to a police officer or investigator. I don't have independent recall of the night of the murder. If I had been questioned sooner I might have remembered the date. All I know is that [the decedent] was killed and [Appellant] was arrested soon afterwards. If I had been questioned sooner I maybe could have said [Appellant] was here. It's possible since he was here so frequently. He also came to South Philly a lot to visit his best friend Naire. He often stayed over at Naire's house.

(Amended PCRA Petition at Exhibit P3).

The PCRA court analyzed Ms. Douglas's statement and concluded "she

cannot offer any substantive testimony. In fact, the only thing she could truly say is her relation to [Appellant] and that she was not questioned about this case around the time of the murder." (PCRA Court Opinion at 10). We agree with this determination, emphasizing that Ms. Douglas's statement does not actually establish that she ever possessed evidence that would be helpful for the defense. As such, Appellant has failed to show how Ms. Douglas's testimony would have been beneficial under the circumstances. **See Gibson, supra**.

To the extent Appellant also complains that trial counsel had an obligation to conduct a pretrial interview with Ms. Douglas, the record demonstrates that counsel endeavored to satisfy his general duty to undertake a reasonable pretrial investigation. **See Johnson, supra**. Particularly, trial counsel had the benefit of the private investigator's report. While trial counsel's duty to investigate could have extended to include a duty to interview Ms. Douglas, Appellant's pleadings force one to speculate as to whether trial counsel had any reasonable strategic basis for failing to do so.[3]

_____

[3] Regarding trial counsel's strategic basis, the Commonwealth's brief argues that Appellant "never offered to support his claims with a signed certification from prior counsel, addressing his claims, or demonstrate an attempt to ascertain trial counsel's input for the PCRA court's review of his claims." (Commonwealth's Brief at 13). The Commonwealth further argues "it is unclear if [Appellant] actually attempted to contact trial counsel to explore the circumstances of his representation and his respective trial strategies…." (**Id.** at 13-14). In this regard, we agree that Appellant's failure to proffer input from trial counsel leaves him unable to satisfy the "strategic basis" prong for

***See id.*** Absent more, Appellant is not entitled to relief on his claim of ineffectiveness related to trial counsel's handling of Ms. Douglas.

In his fourth issue, Appellant notes his "entire defense hinged on the jury finding that the two eyewitnesses misidentified Appellant as the shooter." (Appellant's Brief at 30). Appellant contends that additional evidence existed to demonstrate that his mother, Dawn Heyward, was a credible alternative suspect. Appellant asserts trial counsel "knew or should have known through his pretrial investigation that if [Ms. Heyward] had been dressed as the shooter that night, given the distance and the dim lighting, [Ms. Heyward] could easily pass for Appellant." (***Id.*** at 34). In support of his assertion, Appellant relies on a signed statement from his father, Melvin Heyward, Jr., indicating that the description of the suspect provided by eyewitness Shahere Jackson-McDonald matched that of Ms. Heyward.

Moreover, Appellant complains trial counsel was aware that Ms. Heyward had a potential motive, as well as the opportunity to commit the crime. Appellant argues "any objectively reasonable criminal defense attorney would have presented … evidence of an alternative suspect to the jury," and

_____

any of the claims presented in his amended petition. ***See Roney, supra*** at 21, 79 A.3d at 606-07 (explaining petitioner offered no affidavit or other evidence as to what trial counsel did or did not investigate; petitioner provided no explanation for absence of affidavit from trial counsel and proffered no evidence as to what actions trial counsel took or failed to take; thus, any assertion that trial counsel had no reasonable basis for failing to recognize or present evidence of alternative suspect was speculative).

there is a reasonable probability that the outcome of the trial would have been different if counsel had presented such evidence. (*Id.* at 39-40). Appellant concludes trial counsel was ineffective for failing to present evidence to develop Ms. Heyward as an alternative suspect. We disagree.

"Relevance is the threshold for admissibility of evidence." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

***Commonwealth v. Danzey***, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 219 A.3d 597 (2019) (internal quotation marks omitted).

Instantly, Appellant's amended PCRA petition includes a signed statement from his father, Mr. Heyward. The statement describes Appellant's relationship with his mother, as well as Mr. Heyward's impressions about what happened at trial. In pertinent part, the statement provides:

> From the description that Ms. Jackson[-McDonald] provided the person was mostly identified via body-type. The description could be almost anyone including [Appellant's] own mother. My former wife was once a beautiful woman with a figure like Halle Berry and long flowing hair. As her drug and alcohol abuse escalated she became emaciated and cut her hair short. From a distance it was difficult to tell the difference between Dawn and [Appellant]. They

were similar in height and body type.

(Amended PCRA Petition at Exhibit P11).

In evaluating Mr. Heyward's statement, the PCRA court found his "opinions regarding [Appellant and Ms. Heyward's] similar body types [are] speculative, irrelevant, and inadmissible." (Trial Court Opinion at 11). Here, the PCRA court correctly determined that Mr. Heyward's opinion did not tend to make a fact at issue more or less probable. ***See Danzey, supra***. Moreover, Mr. Heyward merely opined that it would be difficult for Ms. Jackson-McDonald to identify Appellant from a distance, which is a point that trial counsel repeatedly referred to during his cross-examination questions. (***See*** N.T. Trial, 10/29/14, at 105-07). Based upon the statement from Mr. Heyward, there is no arguable merit to Appellant's claim of ineffectiveness for failing to develop an alternative suspect. ***See Pierce, supra***; ***Poplawski, supra***.

In his fifth issue, Appellant contends eyewitness Shahere Jackson-McDonald admitted that she spoke with Sylvester Mitchell after the shooting. Although Ms. Jackson-McDonald was unsure about Mr. Mitchell's name, she identified him at trial as the decedent's cousin, and she indicated that Mr. Mitchell encouraged her to speak with police about what she had seen. Appellant insists trial counsel should have interviewed Ms. Jackson-McDonald prior to trial. Had counsel conducted an interview, Appellant posits that counsel would have learned that Ms. Jackson-McDonald and Mr. Mitchell were

involved in a sexual relationship. Appellant continues:

> The only question that counsel asked this witness on cross-examination about her relationship was whether she and Mitchell were "close." Jackson-McDonald answered "We're close, yes. He's a great person." Counsel then dropped the subject and simply moved on. It would be highly unlikely that the jury would know from that one question and answer that Jackson-McDonald was in fact actively in a sexual and emotional relationship with Mitchell and that her claim of not knowing him well enough to know his name was entirely false.

(Appellant's Brief at 42) (internal citations omitted).

Appellant argues trial counsel had no reasonable basis for failing to interview a witness as critical as Ms. Jackson-McDonald, and Appellant suffered prejudice as a result of counsel's failure. Appellant concludes trial counsel was ineffective for failing to interview Ms. Jackson-McDonald about her relationship with Mr. Mitchell and impeach her at trial with that information. We disagree.

Instantly, the Commonwealth presented testimony from Ms. Jackson-McDonald at Appellant's trial. Among other things, Ms. Jackson-McDonald explained that she was afraid to approach the police on the evening of the shooting. (*See* N.T. Trial, 10/29/14, at 89). The next day, Ms. Jackson-McDonald had a telephone call with an individual who she referred to as the decedent's cousin. (*Id.* at 89, 91). Ms. Jackson-McDonald could not provide the individual's name, but she indicated that that he encouraged her to speak with the police about what she had seen. (*Id.* at 89-90). Later on direct examination, the prosecutor showed Ms. Jackson-McDonald a picture of Mr.

Mitchell, and she identified him as the person she spoke with on the telephone. (**Id.** at 94).

On cross-examination, trial counsel's questioning attacked Ms. Jackson-McDonald's credibility on multiple fronts, including the fact that she did not approach the police until after speaking with Mr. Mitchell. (**Id.** at 108). Trial counsel asked, "And you and [Mr. Mitchell] are pretty close; correct?" (**Id.** at 109). Ms. Jackson-McDonald responded, "We're close, yes. He's a great person." (**Id.**) Trial counsel subsequently revisited this testimony during his closing argument, when he theorized that Ms. Jackson-McDonald had based her statement to the police on the information supplied by Mr. Mitchell. (**See** N.T. Trial, 10/30/14, at 150-51).

Appellant's amended PCRA petition includes an affidavit from Kitty Hailey, a private investigator hired by PCRA counsel. The affidavit describes Ms. Hailey's interview with Ms. Jackson-McDonald about her recollections of the murder. In pertinent part, the affidavit states:

> 5. [Ms. Jackson-McDonald] recalled the evening for me and stated that she saw the young boy across the street on Germantown Avenue going from North to South on the Avenue. She described him as having on a hoodie, but said she could see short dreads (dreadlocks) and that she could identify him from his body type which was that of a typical young man.
>
> 6. She further recalled that this "boy" went up to three other "young boys" across the street on Wister near the shopping area and pulled out a gun and shot. She stated that one of the "young boys" was the person who was shot.

* * *

- 19 -

9. She further claimed that she learned the details of the case the next day from Sylvester who was her "special friend" with whom she had a sexual relationship. He was a relative of the deceased and filled her in on the details of the matter from his personal knowledge.

(Amended PCRA Petition at Exhibit P12).

Here, the affidavit attached to Appellant's PCRA petition does not actually confirm Appellant's assertion that Ms. Jackson-McDonald lied at Appellant's trial. Contrary to Appellant's argument, Ms. Jackson-McDonald did not claim that she did not know Mr. Mitchell well enough to know his name. Rather, Ms. Jackson-McDonald did not initially recall Mr. Mitchell's name, and she quickly confirmed his identity after the prosecutor showed her a photograph.

While the jury was unaware of the sexual nature of Ms. Jackson-McDonald's relationship with Mr. Mitchell, trial counsel did elicit evidence to demonstrate that the two were close friends, thereby providing a basis for the jury to question the credibility of Ms. Jackson-McDonald's account of the murder. Under these circumstances, additional information about the specific nature of Ms. Jackson-McDonald's relationship was irrelevant. *See Danzey, supra*. Consequently, there is no arguable merit to Appellant's claim regarding trial counsel's treatment of Ms. Jackson-McDonald's testimony. *See Pierce, supra*; *Poplawski, supra*.

In his final issue, Appellant suggests that he is entitled to relief based upon the theory that his claims cumulatively undermine confidence in the

convictions. Nevertheless, "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. When the failure of individual claims is based upon a lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed." *Commonwealth v. Elliott*, 622 Pa. 236, 294, 80 A.3d 415, 450 (2013), *cert. denied*, 574 U.S. 828, 135 S.Ct. 50, 190 L.Ed.2d 54 (2014) (internal citations omitted). Here, we have not rejected Appellant's claims of ineffectiveness based upon the prejudice prong of the test for ineffectiveness. Thus, there can be no aggregation of prejudice from multiple ineffectiveness claims, and Appellant's claim of cumulative error fails. *See id.* Accordingly, we affirm the order dismissing the PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/20