J-S05003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NYHEIM REAVES | : | |
| | : | |
| Appellant | : | No. 1376 EDA 2019 |

Appeal from the PCRA Order Entered April 10, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007567-2013

BEFORE:  BOWES, J., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED:  MAY 28, 2021**

Nyheim Reaves appeals from the order that dismissed without a hearing his petition for relief pursuant to the Post Conviction Relief Act ("PCRA").  We affirm in part, vacate in part, and remand for further proceedings consistent with this memorandum.

On Appellant's direct appeal, this Court offered the following summary of the facts underlying his convictions:

> On April 9, 2013, at approximately 12:25 A.M. Appellant, also known as "Weeze," stabbed Jeffrey Thompson ("Thompson") inside of Carrie Turner Memorial Park located at 13th and Poplar of the Streets in the City and County of Philadelphia.
>
> Prior to the incident, Aaron Warren "Warren" was in the park with two other friends when Thompson and another friend arrived.  The five males were rapping and giving each other feedback on their performances.  During this time, Appellant arrived alone.  Both Appellant and Thompson were known to Warren.  Appellant began to perform his own rap.  An argument broke out between Thompson and Appellant because Thompson did not want to hear

Appellant's rap. Thompson told Appellant to get out of his face. Warren stepped between Appellant and Thompson in order to break up the argument. Thompson then took off his jacket. Thompson calmed down, said he was going to leave, and went to grab his jacket. Appellant kicked the jacket, said "I'll kill you out here," and a fight broke out between Appellant and Thompson. Thompson and Appellant fell into the nearby shrubs and began tussling. The fight ended when Thompson walked out of the shrubs and said "I'm stabbed." Thompson, who was bleeding, was holding his stomach/chest area when he exited the shrubs, and he fell to the ground. Appellant ran away from the park.

Sergeant Stanley Sanford ("Sergeant Sanford") responded to a radio call which directed him to the park. He and his partner arrived within a minute of receiving the radio call and observed a black male lying on the ground bleeding. Two other officers were already on location. No weapon was recovered. Thompson was placed into a police vehicle and was taken to Hahnemann University Hospital where he was pronounced dead at 1:07 A.M.

The Assistant Medical Examiner Dr. Edwin Lieberman testified that the cause of death was multiple stab wounds, the fatal wound being a two inch deep wound to the left side of the chest which struck the lung and resulted in internal bleeding. There was also a 3½ inch deep wound to the femoral artery/vein of the left thigh, "another wound that by itself would be fatal." Several other, non–fatal wounds were also observed during the autopsy. The manner of death was found to be homicide.

Norman Jennings, ("Jennings") testified that he was sitting in a vehicle which was parked at Broad Street and Girard Avenue when he saw a black male cross in front of his vehicle. That male went to a nearby trashcan where he removed and discarded what appeared to be a bloody T-shirt, and asked bystanders for articles of clothing. This activity was also captured on a local surveillance camera. Sergeant Harold Toomer, ("Sergeant Toomer") was conducting a surveillance of the area when he was flagged down by Jennings. Following their discussion, Sergeant Toomer went to the trash can where he discovered what appeared to be bloody clothing and a bloody sneaker.

Crime scene officers took photographs and collected evidence at the site of the stabbing and at the trashcans where the clothing and sneaker were located. Among the items retrieved at the

trashcan were a hooded sweatshirt, a white T-shirt, an undershirt, a pair of jeans, and a left Puma Sneaker. Each of these items was bloodstained. No weapon was recovered at either location, however, the right Puma sneaker was recovered at the park. DNA swabs were taken from the clothing and sneakers. Forensic scientist Greg Alstine testified that DNA from Appellant was included as a DNA contributor on both sneakers and that the DNA from both Appellant and Thompson were found on all items retrieved at the trashcan, however the blood from the T-shirt and jeans was found to be Thompson's.

*Commonwealth v. Reaves*, 159 A.3d 44 (Pa.Super. 2016) (unpublished memorandum at 1-3) (cleaned up).

Appellant opted not to testify in his defense, and the trial court held an on-the-record colloquy which confirmed that he made his choice voluntarily after discussing the issue with counsel. *See* N.T. Trial, 10/15/14, at 90-92. Counsel then posited that he nonetheless believed that a voluntary manslaughter jury instruction was warranted by the evidence. *Id*. at 96. Counsel argued that the evidence showed that Appellant was being beaten up, and was injured and bleeding, from which a jury could conclude that Appellant thought he was in danger but responded with excessive violence. *Id*. at 108. The Commonwealth countered that there was no evidence that Appellant was bleeding or that he had a fear of death or serious bodily injury when he told the unarmed victim "I will kill you" and later stabbed him five times and fled. *Id*. at 108-09. The trial court agreed with the Commonwealth and denied the request for the instruction.

The trial court charged the jury as to, *inter alia*, first- and third-degree murder. Following the instructions, counsel did not object to the omission of

a voluntary manslaughter charge. The jury convicted Appellant of third-degree murder and possession of an instrument of crime, and the trial court sentenced him to twenty-two and one-half to forty-five years of incarceration. Appellant's direct appeal resulted in no relief. *See Reaves*, *supra* (unpublished memorandum at 7), *appeal denied*, 169 A.3d 1 (Pa. 2017). Notably, this Court held that Appellant waived his claim that the trial court erred in denying his request for a voluntary manslaughter instruction by failing to object to the charge before the jury retired to deliberate. *Id*. (unpublished memorandum at 6-7) (citing Pa.R.Crim.P. 647(C)).

Appellant filed a timely, verified *pro se* PCRA petition alleging, *inter alia*, that he would have opted to testify on his own behalf had counsel not erroneously advised him that his prior drug convictions would have become admissible as a result, and that counsel was ineffective in not preserving for appeal the trial court's refusal to give an involuntary manslaughter instruction to the jury. *See* PCRA Petition, 11/26/17, at 9-11. The PCRA court appointed counsel, who filed an amended petition raising those two claims and another not pertinent to this appeal.[1] *See* Amended PCRA Petition, 8/6/18, at 2. The Commonwealth filed a motion to dismiss, arguing, in pertinent part, that there was no arguable merit to his voluntary-manslaughter-instruction claim

---

[1] The judge assigned to adjudicate Appellant's PCRA petition was not the same as the trial judge, Judge Lillian Harris Ransom, who was serving on this Court at the time.

because the charge was not warranted by the evidence, and that counsel was not ineffective in advising Appellant not to testify because the on-the-record colloquy conclusively establishes that Appellant freely chose not to testify. *See* Motion to Dismiss, 3/7/19, at 8, 11. The Commonwealth additionally observed that the amended PCRA petition failed to specify what "grossly bad legal advice" caused Appellant to forego testifying, while noting that the *pro se* petition had identified misadvice about the admissibility of his prior record. *Id*. at 9. The Commonwealth stated that if PCRA counsel provided a certification from Appellant confirming the allegations of the *pro se* petition, it "would be inclined to agree to an evidentiary hearing." *Id*. at 9 n.1.

In response, the PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. The notice indicated, without elaboration, that the reason was a lack of merit in the issues raised. *See* Rule 907 Notice, 3/8/19. Receiving no response from Appellant, the PCRA court dismissed Appellant's petition for lack of merit. *See* Order, 4/10/19.

Appellant filed a timely notice of appeal. The PCRA court did not require Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, but did author an opinion pursuant to Pa.R.A.P. 1925(a). The parties have filed their briefs, and the appeal is ripe for our adjudication.[2]

---

[2] Appellant's PCRA counsel passed away after filing his appellate brief. New counsel was appointed, who obtained leave from this Court to file a new brief. These circumstances are attributable for the delay in resolution of this appeal.

Appellant presents the following questions for our review:

A. Did the PCRA court commit an error of law and an abuse of discretion by denying Appellant an evidentiary hearing and relief on his claim alleging that trial counsel was ineffective for not preserving for appellate review a claim alleging that the trial court erred by denying counsel's request that the jury be instructed on imperfect self-defense voluntary manslaughter?

B. Did the PCRA court commit an error of law and an abuse of discretion by denying Appellant an evidentiary hearing and relief on his claim alleging that trial counsel was ineffective for providing Appellant with unreasonable advice regarding whether or not he should testify?

Appellant's brief at 2 (unnecessary capitalization omitted).

We begin with a review of the applicable legal principles. "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Cruz*, 223 A.3d 274, 277 (Pa.Super. 2019) (cleaned up). "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." *Commonwealth v. Cruz*, 223 A.3d 274, 277 (Pa.Super. 2019) (internal quotation marks omitted). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (internal quotation marks omitted).

Appellant's claims challenge the performance of counsel. Accordingly, we observe that counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. **Commonwealth v. Becker**, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, the petitioner must plead and prove: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error." **Commonwealth v. Selenski**, 228 A.3d 8, 15 (Pa.Super. 2020) (internal quotation marks omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." **Id**. at 15 (cleaned up).

Appellant first contends that the PCRA court erred or abused its discretion in dismissing without a hearing his claim that counsel was ineffective in preserving the trial court's refusal to instruct the jury as to voluntary manslaughter. The following legal precepts apply.

"A person is guilty of unreasonable belief voluntary manslaughter, more colloquially referred to as 'imperfect self-defense,' if he knowingly and intentionally kills someone under the unreasonable belief that the killing was justified." **Commonwealth v. Mouzon**, 53 A.3d 738, 744 n.5 (Pa. 2012). In order for the *mens rea* of malice to be negated, "the appellant must have acted out of an honest and good faith belief that he was in imminent danger

of death or serious bodily harm. Such fear must be **actually** entertained, and the killing committed pursuant to the bona fide belief that it was absolutely necessary in self-defense." *Commonwealth v. Nau*, 373 A.2d 449, 452 (Pa. 1977) (emphasis in original). Additionally, the evidence must otherwise support the elements of justification for use of deadly force, namely: (1) the defendant "was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force;" (2) he "believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom;" and (3) that he "did not violate any duty to retreat or to avoid the danger." *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa.Super. 2014) (cleaned up).

"One charged with murder is entitled to an instruction on the lesser offense of voluntary manslaughter only if the evidence reasonably supports such an instruction." *Commonwealth v. Cox*, 686 A.2d 1279, 1291 (Pa. 1996). The defendant need not testify in order to trigger an imperfect self-defense issue, as the evidence from all sources is evaluated in determining the propriety of the instruction. However, there must be some "testimony or some other specific account of what appellee actually believed . . . to raise a jury question whether [the defendant] subjectively believed that he had to use deadly force" to protect himself. *Mouzon*, *supra* at 752. "In determining whether the evidence adduced at trial supported such a charge we must view

the evidence in the light most favorable to defendant." ***Commonwealth v. Robinson***, 721 A.2d 344, 353 (Pa. 1998).

In the instant case, the PCRA court offered the following explanation why Appellant was not prejudiced by counsel's failure to preserve his jury-instruction claim for appellate review:

> In the instant case, the only eyewitness [to the incident] testified that before the victim was fatally stabbed by [Appellant], he made efforts to walk away from the confrontation. "The victim took his jacket off like he was getting ready to fight. So once we calmed the victim down, he said, You know what? I'm going to leave. And when he turned around to get his jacket, that's when [Appellant] kicked the victim's jacket. [Appellant] was like, Man, do what you got to do. I'll kill you out here." According to the eyewitness, the exchange between the victim and [Appellant] did not become physical until [Appellant] threatened the victim's life as the victim gathered his belongings to leave. The victim responded to [Appellant]'s threat by punching [Appellant]'s face. It is evident from the testimony that [Appellant] provoked the difficulty which culminated in the slaying because he responded to the victim's surrender with a death threat. More importantly, the evidence proves that [Appellant] violated his duty to retreat. As the victim attempted to gather his things to leave the scene, [Appellant] easily could have left the scene or at least attempted to do so, especially considering the fact that his opponent was attempting to do the same. Instead of leaving the scene, [Appellant] threatened the victim's life and kicked his coat, provoking the difficulty which culminated in the slaying.

PCRA Court Opinion, 11/26/19, at 4-5 (cleaned up). Additionally, the Commonwealth observes that Appellant "presented no evidence at trial that he was afraid that the unarmed Thompson would kill or seriously injure him while they were 'wrestling and tussling,' that he was free from fault in instigating the conflict, or that he had no duty to retreat." Commonwealth's brief at 8.

- 9 -

Appellant argues to the contrary. He contends that the PCRA court's recitation of the evidence demonstrates that the physical altercation began when the victim punched Appellant in the face, not when Appellant kicked an inanimate object. Appellant's brief at 17. He asserts that he had no duty to retreat, as, "[o]nce the victim punched him, he could not be sure that he could complete safety because he did not know if the victim would pursue him to continue the assault or if the victim was armed with a gun and would sho[o]t him." *Id*. at 17-18. Finally, while conceding that the evidence did not support an objectively-reasonable belief that Appellant was in mortal peril from the unarmed victim, "he submits that his subjective belief of being physically harmed was not unreasonable." *Id*. at 19. After being "viciously assaulted" by the punched in the face and immobilization by the victim, Appellant argues that he "had every right to believe that the victim would do so again while he was in a superior position with respect to [A]ppellant." *Id*.

Assuming *arguendo* that Appellant is correct as to the instigation and retreat prongs of imperfect self-defense, the evidence before the jury simply did not give rise to the inference that Appellant acted out of the sincerely-held belief that his use of deadly force was necessary to protect himself. Appellant points to nothing, such as an indication that the victim was armed, or that the victim's companions were moving in to join the fist-fight while he had Appellant pinned down, that would give rise to an inference that Appellant feared for his life and limb. *Cf. Commonwealth v. Monroe*, 322 A.2d 100,

101 (Pa. 1974) (holding that, although the defendant did not testify as to his subjective beliefs, the jury could have inferred that he was actually motivated by an objectively-unreasonable fear that his life was in danger, where the defendant fired a weapon at the threateningly-approaching companions of an armed man he had argued with twenty minutes prior). Rather than infer, the jury would have to speculate as to his subjective motivation in stabbing the victim five times. As such, Appellant has failed to convince us that the result of his direct appeal would have been different had counsel preserved the issue. We therefore affirm the PCRA court's order to the extent that it dismissed Appellant's jury-instruction claim.

Appellant next asserts that the PCRA court erred in denying, without holding an evidentiary hearing, his claim that counsel provided him unreasonable advice regarding whether he should testify. The following principles inform our review of this claim.

> [T]he decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1075 (Pa.Super. 2019) (internal quotation marks omitted).

The PCRA court rejected Appellant's claim solely on the basis that Appellant voluntarily waived his right to testify during the on-the-record-

- 11 -

colloquy, indicating that it was his decision alone and that he had not been coerced. *See* PCRA Court Opinion, 11/26/19, at 5-6.

We have observed that, "where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand." ***Commonwealth v. Rigg***, 84 A.3d 1080, 1086 (Pa.Super. 2014). However, as Appellant notes, where the defendant establishes that his decision was based solely upon counsel's advice, "the pertinent inquiry is whether counsel's advice was reasonable so as to render Appellant's decision not to testify knowing and voluntary." ***Commonwealth v. Nieves***, 746 A.2d 1102, 1105 n.5 (Pa. 2000).

Appellant asserts that his decision in this case was based upon counsel's advice that he should not testify. *See* Appellant's brief at 24. *See also* PCRA Petition, 11/26/17, at 9-10 (alleging that Appellant wished to testify, but was dissuaded by counsel's indication that his prior drug convictions would have become admissible as a result). Appellant argues that the advice was unreasonable because, "it was vitally important . . . that the jury hear from him so that he could explain why he believed that he was in danger of serious bodily injury and even death both due to the fact that [the victim] pinned him to the ground and sat on top of him and because of the victim's violent reputation." Appellant's brief at 24. He maintains that, had counsel properly advised him about self-defense or imperfect self-defense, the result of the

- 12 -

proceeding, *i.e.*, his colloquy concerning the waiver of his right to testify, would have been different.[3] *Id*. at 30.

The Commonwealth's response to Appellant's arguments is less than ardent. It observes that Appellant is bound by the statements made in his colloquy, but does not dispute that if those statements were based upon unreasonable advice, he could nonetheless prevail on his claim. **See** Commonwealth's brief at 10-11. The Commonwealth acknowledges that the amended PCRA petition alleged that Appellant would have testified as to his version of events but for counsel's advice not to do so, but nonetheless posits that such was not specific enough to warrant further proceedings. **Id**. at 9-10. Likewise, the Commonwealth reiterates that it had noted in its motion to dismiss that it would have been inclined to agree that a hearing was warranted if Appellant provided a certification concerning the bad advice upon which he relied, but Appellant failed to provide the certification. **Id**. at 10.

Upon review of the certified record, we conclude that the PCRA court erred in declining to hold an evidentiary hearing on Appellant's claim that he would have opted to testify but for counsel's constitutionally-deficient advice.

_____

[3] As we have held, "the appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the waiver proceeding would have been different absent counsel's ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand." **Commonwealth v. Walker**, 110 A.3d 1000, 1005 (Pa.Super. 2015).

As noted above, Appellant indicated at trial that his decision not to testify followed consultation with counsel. **See** N.T. Trial, 10/15/14, at 90-92. In these circumstances, his statements at the colloquy that he freely made his decision not to testify are not inconsistent with his claim that that decision was premised upon advice that he later learned was faulty. **See Nieves**, **supra** at 1105-06 (granting a new trial, despite extensive colloquy confirming voluntariness of decision not to testify, where counsel's unreasonable advice to the defendant that his prior drug convictions would have been admissible if he testified rendered his decision not to testify unintelligent and unknowing).

The PCRA court did not cite any pleading defects as the basis for its decision to dismiss Appellant's petition without a hearing. This Court has explained that "[t]he purpose of a Rule 907 pre-dismissal notice is to allow a petitioner an opportunity to seek leave to amend his petition and correct any material defects, the ultimate goal being to permit merits review by the PCRA court of potentially arguable claims." **Commonwealth v. Smith**, 121 A.3d 1049, 1054 (Pa.Super. 2015). Since the PCRA court did not cite as a basis for dismissal a lack of a certification or insufficient specificity in Appellant's pleading concerning the nature of the advice counsel gave, thus putting Appellant on notice to seek leave to amend, we decline to affirm on the alternative basis advocated by the Commonwealth.

Further, in the absence of a hearing, the certified record does not contain sufficient information to conduct an independent assessment of the

sufficiency of Appellant's claims to determine if there is another basis to affirm the PCRA court's order. *Accord Commonwealth v. Walker*, 110 A.3d 1000, 1005 (Pa.Super. 2015) (vacating order dismissing claim that the decision not to testify was based upon ineffective assistance of counsel and remanding for a hearing). As even the Commonwealth concedes, Appellant alleged in the PCRA proceedings that his decision not to testify was based upon counsel's bad advice about the admissibility of prior convictions and the absence of advice concerning the viability of his defense without his testimony about the events that led to the victim's death, and that he would have testified but for counsel's ineffectiveness. In these circumstances, our decision in *Walker* aptly summarizes the present situation and the course the PCRA court must follow:

> because the PCRA court . . . did not conduct an evidentiary hearing, we are unable to determine whether Appellant's claim has arguable merit (i.e., whether counsel indeed advised [him] in the manner claimed, and whether [his] decision to testify was solely based on that advice), and/or whether counsel had any reasonable basis for advising Appellant not to testify. Therefore, we vacate the PCRA court's order denying Appellant's petition and remand for a hearing on this ineffectiveness claim. If, at the conclusion of that proceeding, the PCRA court determines that [Walker] has proven the first two prongs of the ineffectiveness test, it shall then assess whether [he] was prejudiced by counsel's conduct, applying the standard set forth herein[, i.e., whether the outcome of the waiver proceeding would have been different but for counsel's ineffectiveness].

*Id*. at 1005-06. Hence, in accordance with *Walker*, we vacate this aspect of the PCRA order and remand for further proceedings.

Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/28/21